## CHOUTEAU ET. AL. *vs.* RICE, H. M. ET. AL. IN CHANCERY.

*First.* Where new matters are to be set up in a suit of equity, it must be done by supplemental bill, and not by special replication.

*Second.* Pleading new matter by special replication, is no longer allowable.

*Third.* New matter cannot be set up by amendments to an original bill.

*Fourth.* Objections to the form and manner of a bill in equity, cannot be made available on *general demurrer.*

*Fifth.* Inconsistent and repugnant matters are not admitted by a demurrer. They cannot be well pleaded; and only such matters as are well pleaded are admitted by demurrer.

*Sixth.* The original and supplemental bills compose but one suit, and a general replication applies to both.

HOLLINSHEAD, BECKER & WILKIN, for Applicants.

AMES & NELSON, Contra.

This was an appeal from an order overruling a demurrer to a supplemental bill, in the District Court of the United States for the Second Judicial District, and brought into this Court to reverse that order. The Judge below overruled the demurrer on the grounds that a general demurrer was not good when there were equities apparant upon the face of the bill ; that the demurrer went simply to the form and manner of pleading, and that could only be taken advantage of by a special demurrer, setting forth with certainty the objections.

Held by Appellants,

1. That the facts are not set forth with the reasonable certainty necessary to enable the defendants to answer, or the Court to decree. 1 *Barb. Ch. Pr.* 38, 39, 40.

2. That the facts set forth in the Supplemental Bill arose prior to the filing of the original bill, as appears upon the face of the Supplemental Bill. 3 *Dan'l Ch. Pr.* 1681 ; *Lord Red.* 202 ; 4 *Simms,* 76 ; 1 *Paige,* 200 ; *Story's Eq. Pl.* 614 ; 2 *Barber's Ch. Pr.* 75 ; *Mitford's Pl.* 60—164 ; 3 *Atk.* 817 ; *Cooper's Eq. Pl.* 214 ; *Mitford's Eq. by Jeremy,* 202, 203, 207 ; 2 *Madd.* 387.

3. The Supplemental Bill is inconsistent with the original bill, and in the most important particulars in direct conflict therewith.

4. That the statements contained in the Supplemental Bill do not establish any claim of the complainants to equitable relief, but are (apart from sweeping charges and unsupported allegations) entirely consistent with fairness and integrity on the part of the defendants.

5. The facts and circumstances set forth in the Supplemental Bill are all either legitimate evidence in support of the original bill, or are properly the subject of replication to the plea on file, and therefore need not, and ought not, to be stated by way of supplement. *Story's Eq. Pl.* Sec. 337 ; *Mitford's Pl.* 164 ; 3 *Atk.* 817 ; 1 *Paige,* 201 ; 2 *Barb. Ch. Pr.* 75 ; 3 *Paige,*

294; 2 *Mad. Rep.* 53, 387; 17 *Ves.* 144; 1 *Barb. Ch. Pr.* 106; 1 *Dan'l Ch. Pr.* 656.

The Appellees held:

1. Where new events or new matters have occurred since the filing of a bill, a Supplemental Bill is in many cases the proper mode of bringing them before the Court, for, generally, such facts cannot be introduced by way of amendment. *Story's Eq. Pl.* p. 381, Sec. 332; p. 385, Sec. 335, 336.

2. After the pleadings on both sides are closed, the Complainants cannot remedy an original deficiency in their bill by amendment, because that would open the whole cause anew and be productive of irregularity and confusion; but if at such a stage of the proceedings any imperfection should be discovered in the Bill, as that which requires further discovery, or to put new matters in issue, the complainants will be at liberty to resort to a Supplemental Bill for such purposes. *Lubes' Eq. Pl.* 137.

3. A Supplementary Bill in the nature of a bill of Discovery may be filed, after the cause is at issue, where the new facts were not known to the complainants at the time of filing the replication. *Bar. & Har. Dig.* Vol. 3, p. 44; 3d Vol. *Eq. Dig.* 45; 4 *Simons,* 628.

4. Where material facts have occurred subsequent to the commencement of the suit, the Court will give the Complainants leave to file a Supplemental Bill; and where such leave is given, the Court will permit other matters to be introduced into the Supplemental Bill, which might have been incorporated in the original bill by way of amendment. 6 *Monroe* 141; 2 *Maddock,* 544; *Moulton Ch. Pr.* 234, 264, 291; 1 *Pg. Ch. Rep.* 168, 200; 3 *Atkins,* 370; *Hanington's Mich. Rep.* 332; 1 *Hoff. Pr.* 405, 42; 4 *Eq. Dig.* 583; 5 *Mad. Ch. Rep.* 427.

5. A Supplemental Bill is not a supplemental suit, but a a mere continuation of the original, which introduces supplemental matters. The whole record is one cause, and a general replication applies to the whole record, and both the original and Supplemental Bill is to be taken together. 5 *Mad. Ch. Rep.* 259.

6. Where a bill is defective in substance, and shows no equi-

ties upon its face, a general demurrer is proper; and where defective in form only, can be reached by special demurrer, and the causes of the demurrer must be assigned with certainty. *Lubes' Equity*, 347.

.7. Where the demurrer is to the whole bill, if any part of the bill is good, the demurrer must be overruled; as in a Bill of Discovery and Relief, if the Complainant is entitled to relief only, the demurrer is bad. 1 *Johnson's Cases, Larghts vs. Morgan, et. al.* 433, 434; 5 *Johnson's Ch. Rep.* 186.

8. A demurrer which is bad in part must be overruled: for it is not like a plea, which may be allowed in part; but a demurrer bad in part is bad *in toto*. 1 *Atkins' Ch. Rep.* 450, *Suffolk vs. Green; Story's Eq. Pl.* 486, and Notes 707, and Sec. 692; 5 *Paige's Ch. Rep. Randolph vs. Dickenson*, 517; 1 *Paige's Ch. Rep. Insurance Co.* 284.


FULLER, C. J. The plaintiffs, being members of the firm known as the "Northern Outfit," engaged in the Indian trade, filed their bill of Complaint against their Co-partners, Rice and others, on the ground of fraud, and breach of the covenants contained in the articles of Co-partnership on the part of the defendant, Rice; and prayed a dissolution of the partnership; an injunction; the appointment of a receiver; the taking of an account; a decree against Rice, for any balance found due from him to the plaintiffs to be paid out of his individual property, if the partnership effects in his hands should prove insufficient; and for general relief. The bill was filed on the 10th day of October, 1849. A settlement was made the next day between the parties, the terms of which were reduced to writing, signed and sealed.

By the first article of the settlement, the plaintiffs released and discharged Rice from all contracts with them, and from his accounts and liabilities to them or any of them, or to the Outfit, on the Co-partnership books, or the books of the plaintiffs, P. Chouteau, Jr. & Co.

By the second article, the plaintiffs assumed all the debts and liabilities of the Co-partnership, incurred in its legitimate business.

By the fourth article, in consideration of the preceding, the partnership was dissolved.

By the fifth, Rice covenanted to transfer to the plaintiffs forthwith and without delay, the books, papers, accounts, property and effects, real and personal, in possession of himself or Lowry, or under their control, belonging to the partnership; and a schedule of the real property was annexed.

By the sixth article, Rice relinquished to the plaintiffs all claim to four thousand five hundred dollars deposited by him with B. H. Campbell of Galena, and credited in an account made up of items for his individual benefit, as well as items for the Outfit.

By the eighth article, upon the faithful performance by Rice of the stipulations on his part, so far as was immediately practicable, all proceedings upon the said Bill of Complaint were to be forthwith discontinued and withdrawn.

At a subsequent period, the plaintiffs proceeded with their original suit. The defendant, Rice, being brought into Court by process of subpœna, pleaded the articles of settlement in bar, and averred performance on his part. The plea was filed in March, 1850.

In May following, after the plea had been allowed by the Court, the plaintiffs filed a supplemental bill, reciting the original, impeaching and avoiding the settlement on the ground of fraud, and that Rice had not fulfilled on his part. To this bill Rice demurred, and the decision of the Court below, overruling the demurrer, is now brought here for review.

It is contended by the counsel for the defendant, that the matters in avoidance should have been set up by replication, and not by supplemental bill. This point is not well taken. Special replications are now disused, and general replications, denying and putting in issue the matter of the plea, are the only ones allowed. *Story's Eq. Pl.* Sec. 878.

There was, therefore, no mode of avoiding the plea in bar but by supplemental bill. It could not be done by amendment of the original bill, because the matters pleaded in bar had arisen subsequent to its exhibition; and the fraud charged could not be consummated till the articles of settlement were executed, nor the breach of them till afterwards; and, conse-

quently, the matters set up in avoidance, in part at least, must have transpired subsequent to the filing of the original bill also. The plaintiffs could not by an amendment of the original bill, avoid a settlement made after it was filed. It is true, that the accounts and inventory alleged to be false and fraudulent in the Supplemental Bill, were in *esse* and known to the plaintiffs before the commencement of their suit, and as false and deceptive then as they ever were afterwards; but if the plaintiffs did not know them to be incorrect, and, taking advantage of their ignorance, the defendant, Rice, subsequently to the filing of the original bill, fraudulently used the books and inventory to induce the plaintiffs to consent to the settlement which was made, then they can only show that by way of supplement; and the statement of the accounts and inventory, and of their falsity, is necessary, in order to show by what means the fraud was committed. For this purpose, what went before was as necessary to be set out as what happened after suit was brought, and could not be separated from it without rendering the pleading imperfect. The prior matter was indispensable for the explanation of that which followed. It is not because it was not discovered before the original bill was filed that it is properly stated by way of supplement, but because it could not possibly be used for the purpose for which it is brought forward, till afterwards. *Story's Eq. Pl.* Sec. 335. 1 *Hoff. Ch. Pr.* 42.

The objection, that the statements of the Supplemental Bill are vague and uncertain, is to their form and manner, and not good on general demurrer. *Story's Eq. Pl.* Sec. 455. *Lubes' Eq. Pl.* 347. Averments may be so vague and imperfect as not to be susceptible of an answer, or lay the foundation of a decree. *Story's Eq. Pl.* Sec. 242. Some of the statements of the bill before us are loose and indistinct, but sufficient in that respect when taken in connection with others to call for discovery and relief.

Let us next inquire, whether, admitting the statements of the Supplemental Bill to be true, they make out a case sufficient to avoid the settlement set up in bar. They are in effect, 1. That in the latter part of September, 1849, Rice furnished the plaintiffs an inventory of the goods and effects remaining

on hand, of that branch of the Northern Outfit of which he had charge, called the Winnebago and Chippewa Outfit, as required by the third article of Co-partnership; that at the time of the filing of the original bill, and at the time of the settlement, they supposed it to be true, and that it contained a correct, or nearly correct statement of the goods, effects and matters enumerated as the property of said Company; that Rice so represented to them; and that was one ground and inducement for their entering into the covenants mentioned in the plea; that said inventory was, in fact, false and deceptive, which was well known to Rice and unknown to them until after the settlement, and they were thereby deceived and defrauded. Some of the specifications, intended to show that particular items of the inventory were false and fraudulent, are insufficient for that purpose, but one or two of them, if true, tend to impeach its integrity to some extent.

The statements of the Supplemental Bill charging fraud, are in effect, 2. That the books of account of the Winnebago and Chippewa Outfit, kept by Rice, pursuant to the third article of Co-parrtnership, showed at the time of filing the original bill, and at the time of the settlement, large bills and accounts standing upon them against different responsible persons, and purporting to be due from them to said Outfit; that Rice represented the same to be due and unpaid, which the plaintiffs at that time believed, supposing the books to have been truly and correctly kept, and that they showed fully and exactly the debts due the Outfit; that that was the principal consideration for entering into the agreement of settlement; but that many of those accounts and bills had been fully paid to Rice previously, others partially paid, and against others there were meritorious offsets, of which payments and offsets numerous specifications are given; and that all this was well known to Rice, and unknown to the plaintiffs. There is also a specification under this head, of a large amount of notes and bills appearing upon the books under the head of "bills receivable," to be due the concern, and so represented to be by Rice; but it does not appear, from the statements of the bill, that they were not so due, or that the amount was less than the books showed, but merely that Rice has not satisfactorily accounted for a part of them since the

settlement, and had either used in his transactions, or retained a part of them, to the amount of $17,000.

This summary of the allegations of fraud shows conclusively that they sustain the charge if true. They establish both a *suppressio veri* and a *suggestio falsi*. *Story's Eq.* Secs. 192, 207.

The deception practiced upon the plaintiffs, if any, was the gist of the fraud. If they were not deceived—if they knew the inventory to be untrue in the particulars complained of: that the books did not show the debts due the concern, and that the representations of Rice were false,—they are concluded by the settlement. *Story's Eq.* Sec. 202. The decision of this case is greatly embarrassed by the difficulty of reconciling the statements of the Original with those of the Supplemental Bill. They are apparently in conflict and inconsistent with each other. The principal averments of the original bill are incorporated with and make part of the Supplement; substantially, they make but one pleading, and; so far as they conflict, destroy each other. Inconsistent and repugnant matters are not admitted by a demurrer: they are not well pleaded, and in the language of the books, "such matters only as are well pleaded are admitted." *Gould's Pl.* 470. *Briggs vs. Dorr*, 19 *J. R.* 96.

It is alleged in the original bill, that Rice did not render any *such* account of his transactions as he was bound to, nor comply in anything with the terms of the third article of Copartnership. The only account he was bound to render by that article was, an inventory of the goods and effects on hand at the end of the year, and a schedule of the debts due the Company. It is averred in the Supplemental Bill, that he did furnish an inventory, and that it was false. Now, if the averment in the original bill means that he had not rendered such an inventory as he was required to, because some of the items in the one furnished were false, then it is plain the plaintiffs knew they were false when that bill was filed, and were not deceived or defrauded in that respect, in the settlement. But it is not necessary to put such a construction on the averment. The pleader, probably, did not mean to convey the idea that no inventory had been rendered, but that such an one as was

8

required had not; and it was not such as he was bound to render, if strictly true so far as it went, but not sufficiently full or comprehensive. The defect intended to be complained of may have been, the omission of items of real estate which it was charged Rice had purchased with the Company's funds, or moneys of the Company which it was alleged he had converted to his own use : or the omission of a schedule of debts. It may not even have occurred to the plaintiffs at that time that any items of the inventory were false; and the allegation of the Supplemental Bill, that they did not discover their falsity till after the settlement, may be strictly true and consistent with the averments of the original bill, when fairly construed.

It is further alleged in the original bill, that "Rice did not keep such books or accounts of the moneys, goods and property received by him from the plaintiffs, and of his transactions, as would give any insight into the business, or satisfactory account for the same;" * * * "that they could not arrive at any certainty in regard to the amount (they should lose by him), owing to the confused manner in which the books had been kept; and that they were quite in the dark in relation to the whole business." On the other hand, the Supplemental Bill alleges that at the time of filing the Original they supposed and believed the books had been truly and correctly kept; and that the amounts appearing from them to be due on accounts were so due and unpaid; and that the books showed fully and exactly the amount of debts due the Company, which they afterwards discovered was not the case. The averments of the original bill referred to are very indefinite, and state no particulars in which the books were false and deceptive, but merely that they did not give any insight into, and left the plaintiffs in the dark in relation to the whole business. They amount to no more than that the books were very imperfect and unsatisfactory, and the averments would probably have been held bad on general demurrer. They are inconsistent with the statement in the Supplemental Bill, that the plaintiffs supposed and believed the books had been correctly kept, but are not necessarily in conflict with the allegation that they supposed the accounts upon them appearing to be due were due, and that the

books showed fully the amount of debts due the Company. They might very well have supposed the books were defective, and even false, in other particulars, and yet correct in these; and may, at the time of the settlement, have honestly confided in Rice's representation that they were so.   His statement in that respect was calculated to throw them off their guard, and to prevent further investigation and inquiry, which otherwise they might have instituted.   His means of knowledge were superior to theirs; he was bound in good faith not to take advantage of that circumstance, and to represent truly, if at all, and he might have deceived them into the belief that accounts were correct which they had before supposed erroneous.

Upon a critical comparison of the statements incorporated in the Supplemental Bill, there does not appear to be so great a conflict between them as is necessarily fatal to it; and, although the Supplemental statements may be to some extent false, it does not follow that the plaintiffs were not deceived by Rice's representations.   His situation, and the relation in which he had stood to them, rendered it more easy for him to mislead them than it was for them to discover the truth, and it is therefore proper that he should be more closely watched. *Story's Eq.* Secs. 218, 220.   He can hardly be permitted to use vague allegations in the original bill, to show that the plaintiffs knew beforehand that his representations made for the the purpose of deceiving them, as detailed in the Supplement, were false.   Still, it is but justice to the defendant to add, that if the two bills of the plaintiffs are not directly in conflict in their material allegations, so as to nullify each other, they are sufficiently at variance to cast suspicion on the Supplemental statements, and render it to some extent doubtful whether the fraud charged was in fact committed.

There would be difficulty, if there was no other ground in sustaining the Supplement Bill, solely upon the ground of the alleged non-performance by Rice of the agreements on his part, contained in the articles of settlement.   The material covenants in those articles are not concurrent or dependent. Concurrent covenants are those where mutual conditions are to be performed at the same time. *Stephen's N. P.* 1071.   Dependent covenants are those in which the performance of one

depends on the prior performance of another. *Ib.* The release by the plaintiffs, contained in the first article of the agreement in question, was absolute and unconditional, and fully executed on delivery. It did not wait for any act to be done on the part of Rice, to give it full force and effect. The same is true of the fourth article, by which the partnership was dissolved. No omission on the part of Rice could restore the partnership relation. The obligation of the plaintiffs to pay the debts of the Company, assumed in the third article, was complete and perfect on delivery of the instrument, and did not depend for vitality on anything which was to follow. The acts covenanted to be performed by Rice in the fifth article were not to be done simultaneously with the execution of the articles, but afterwards, and the length of time is not material. A failure to perform them would not avoid the release or the dissolution contained in the prior covenants. By the sixth article, Rice gave up his interest in four thousand five hundred dollars credited on the books of Campbell, unconditionally. And, although by the eighth, the suit was not agreed to be discontinued except upon the performance by Rice of the stipulations on his part so far as was immediately practicable, yet, the agreement, if left to stand, may have wrought such a change in the subject matter of the suit that it could not be further prosecuted effectually. And the better opinion seems to be, that that would have been the effect of it. After releasing Rice from accountability and liability, they could not still call upon him to account; after a dissolution, it would be idle for the Court to decree one; there was no occasion to adjust the profits and losses, and the claims of the partners, between themselves, after they had agreed upon the terms of settlement. It was unnecessary to continue the original suit for the purpose of obtaining relief against the defendant for the breach of his covenants, and a bill for that purpose would not be a supplemental but an original bill, or in the nature of an original bill.

But, the charge of fraud being sustained by the allegations of the bill, if true, as we have held in this case, the Court may take into consideration the circumstance that the defendant has broken his agreement, along with the fraud charged in obtain-

ing it, as an additional reason why the bill should be sustained.

It is questionable whether the agreement of settlement or compromise has not been so far executed that the plaintiffs are not entitled to the same, or all, the relief which the original bill calls for; enough appears upon the Supplemental Bill to show that the parties cannot be placed in *statu quo.* They may, however, be entitled to some relief; and the nature and extent of it are proper for the determination of the Court below, when all the facts are before it, and after a full hearing, which shall not be confined to the allegations of the Supplemental Bill alone.

It only remains for us to inquire whether the plaintiffs, since the discovery of the alleged fraud, have lain by; neglected to assert their rights to redress; still gone on under the contract of settlement, and by their acts ratified and adopted it.

The Supplemental Bill was not filed till a year and a half after the agreement of 11th of October, 1849, was entered into. In the meantime, it is fairly inferable from the bill that the books were in the possession of the plaintiffs. It is hardly possible he should not have discovered the errors in them complained of, if they existed in a shorter period. There is room for a suspicion that they slept upon their rights when they should have asserted them if they ever intended to do so.

But that is not enough. The plaintiffs complain of a breach of the covenants in the agreement, on the part of Rice in only two particulars. When he performed the balance of them is not stated, but we may presume it was immediately, or soon after their execution, as their terms required. At what time the plaintiffs discovered the alleged fraud is not averred, except that it was since the execution of the agreement. Nor does it sufficiently appear that he has done anything since the discovery by way of performance which they have accepted, to ratify and confirm the settlement. From the letter to Sibley, a copy of which is inserted, the agreement seems to have been treated as binding and in force on the eighth of November after. There is nothing in the bill to show that the fraud was discovered before.

There is some reason for supposing, from the statement that

Rice admitted to the plaintiffs, the proceeds of lots at St. An-thony belonged to them, and they were entitled either to such proceeds or the lots by virtue of his covenants—that they con-tinued to insist upon his performance of the agreement not-withstanding the fraud. The only purpose the introduction of this allegation could serve was, to lay the foundation for a de-cree that Rice pay the proceeds to them. And the preceding averment in the bill, that Rice had not turned over the claim at Sauk Rapids, according to his agreement, which, with the privilege of occupying, was of great value to them, to wit, of the value of two thousand dollars,—seems to look to a specific performance, or the recovery of damages for the breach, as that claim was inventoried at only one thousand dollars. By proceeding in this suit to compel a performance on the part of Rice, or damages for his non-performance, the plaintiffs would necessarily affirm the contract and be bound by it. They cannot reap the benefit of one part of it, and repudiate the other. The bill is certainly open to the construction that the plaintiffs claim relief against Rice other than the avoidance of the contract for the breaches of it on his part. That, however, is not the construction we have put upon their allegations, but rather that the breaches are assigned for the purpose of avoiding the agreement; and what is said about the admissions of the defendant in one instance, and of the value of particular property in another, is mere surplusage, in-troduced through the carelessness of the pleader in not keeping the object before him steadily in view. And it is proper to add that the intention may have been to frame the bill with a double aspect, with a view to set the agreement aside for fraud, or, if that should be denied, then to enforce its provisions. Whether, upon failure to establish their right to the first, the plaintiffs could obtain the alternative relief, it is not now ne-cessary to discuss; but their claiming it in case the Court should refuse to set aside the agreement, does not necessarily confirm the settlement.

Upon the whole, it would be hazardous to decide the ques-tion, whether they have confirmed the settlement since the dis-covery of the alleged fraud, against the plaintiffs, by the feeble light to be gathered from the bill; and it is better, if they have,

to leave the defendant to show it more fully by his answer and proofs.

·The conclusion arrived at, from a review of the whole subject is, that the order appealed from, overruling the demurrer, should be affirmed with costs, and the cause remanded to the District Court of Washington County, for further proceedings.