## Case No. 2,552.

CENTRAL PAC. R. CO. v. DYER et al.

[1 Sawy. 641; 14 Int. Rev. Rec. 139; 6 Am. Law Rev. 385.][1]

Circuit Court, D. Nevada. Aug., 1871.

EQUITY PLEADING—MULTIFARIOUSNESS — ACTION TO DETERMINE ADVERSE CLAIM — RAILROAD GRANT—CONSTRUCTION.

1. The plaintiff, the Central Pacific Railroad Company, a corporation created under the laws of California, files a bill against a large number of persons, who are citizens of the state of Nevada, to determine the estate and interest claimed by them in land in that state over which the line of the railroad constructed by the company runs. In the bill the plaintiff avers, that on the first day of July, 1862, congress passed an act to aid in the construction of a railroad from the Missouri river to the Pacific ocean [12 Stat. 491], and by its provisions the plaintiff was authorized, after completing its road across the state of California, to extend its construction through the territories of the United States eastwardly until it should connect with the road which the Union Pacific Railroad Company, a corporation created by the same act, was authorized to construct westwardly from a designated point in the territory of Nebraska; that, by the same act, the right of way was granted to the plaintiff through the public lands of the United States for the construction of the road, to the extent of two hundred feet on each side of the track, with the right to take from the public lands adjacent all needed earth, stone, timber, and other materials, including all necessary ground for stations, buildings, workshops, depots, machine-shops, switches, side-tracks, turn-tables and water stations which the plaintiff might require for the use and maintenance of the road; that under the right and authority thus conferred, the plaintiff had laid out and constructed a railroad from the city of Sacramento to the eastern line of the state of California, and from that line eastwardly in the territory, now state of Nevada, a distance of forty-seven miles, and had expended in the construction of this portion of the road in Nevada, more than two millions of dollars; that all the lands through which it passes, were at the time of the passage of the act of congress, and the location of the road, public lands of the United States, and subject to the grant of the government for the use of the railroad; that the plaintiff is in its possession, maintaining and using it in the transportation of passengers, freight and the mails of the United States; that the plaintiff has erected near the line of the road and within two hundred feet of the track on either side, at convenient places and points, divers work-shops, machine-shops, side-tracks, turn-tables, water stations and depots; and has made various excavations and taken wood, stone, earth and other material, and has used the same in the construction of the road; that the defendants claim and each of them claims to own some estate or interest in the land over which the road passes and upon which the track is laid, and in the public lands adjacent thereto, and the portions upon which the work-shops, side-tracks, turn-tables and switches have been constructed, and the stations and depots have been established, adverse to the interest and title of the plaintiff, which estate and interest they claim, and each of the defendants claims to have acquired by purchase from the government of the United States, subsequent to the grant to the plaintiff; and that they claim the land over which the road passes, and their estate and interest in the same, in distinct parcels or quantities; but that the particular quantities claimed by each are unknown to the plaintiff; that they threaten and intend to bring distinct actions at law, based solely upon such pretended purchases, to recover damages from the plaintiff, for alleged trespasses upon and injuries to the property, and thus to involve the plaintiff in a multitude of suits; and that the estate and interest claimed by the defendants and each of them are invalid and subordinate to the grant to the plaintiff, and the rights the grant conferred: *Held*, on demurrer, that the bill was not subject to the objection of being multifarious because it averred that the defendants claimed separate and distinct parcels, all of them being alike interested in defeating the claim of prior right to the land made by the plaintiff under the grant of the government. The determination of the principal question involved, equally concerned all of the defendants.

[Applied in Gillespie v. Cummings, Case No. 5,434. Cited in The Debris Case, 16 Fed. 32.]

2. A statute of the state of Nevada declares that an "action may be brought by any person in possession, by himself or tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate or interest." The term "action" in that state includes not merely proceedings at law, but suits for equitable relief: *Held*, that the statute enlarges the class of cases in which the jurisdiction of equity was formerly exercised in quieting the title and possession of real property. It dispenses with the necessity of the previous establishment of the right of the plaintiff by repeated judgments in his favor in actions at law; and to that extent it confers upon the possessor of real property a new right, which enables him, without the delay of previous proceedings at law, to draw to himself all outstanding inferior claims. That right the national courts will enforce in the same manner in which they will enforce other equitable rights of parties.

[Cited in Wells v. Miner, 25 Fed. 536; A. & W. Sprague Manuf'g Co. v. Hoyt, 29 Fed. 428; Hyman v. Wheeler, 33 Fed. 630.]

3. The grant of the right of way to the plaintiff through the public lands of the United States, made by the second section of the act of congress of July 1, 1862 [12 Stat. 491], was a present grant, operating immediately upon the passage of the act, without reservation or exception, and was subject to no conditions except those which were subsequent, or necessarily such as that the road should be constructed within the period specified, and be afterwards maintained and used for the purposes designated. All acquisitions of land over which this right of way was thus granted, made subsequent to the passage of the act, were subject to the exercise of this right.

[Cited in Sanger v. Sargent, Case No. 12,319; Southern Pac. R. Co. v. Dull, 22 Fed. 493; Southern Pac. R. Co. v. Orton, 32 Fed. 479.]

4. The reservations and exceptions found in the third section of the above act apply only to the grants of the land therein mentioned, and do not apply to the grant of the right of way made in the second section.

5. The provision of the seventh section of the above act requiring the plaintiff, within two years, to designate the general route of the road as near as might be, and file a map of the same in the department of the interior, did not affect the grant of the right of way; it only furnished the means by which the secretary could withdraw the lands within a specified distance of such designated route from pre-emption, private entry and sale.

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 6 Am. Law Rev. 385, contains only a partial report.]

This was a bill to quiet the title of the plaintiff to a portion of the land granted to it by congress in the territory, now state of Nevada, as a right of way for the construction of its railroad. The plaintiff was incorporated by the state of California in June, 1861. On the first day of July, 1862, congress passed an act incorporating the Union Pacific Railroad Company (12 Stat. 489), entitled "An act to aid in the construction of a railroad and telegraph line from the Missouri river to the Pacific ocean, and to secure to the government the use of the same for postal, military, and other purposes."

The following are the second, third and seventh sections of the act:

"Sec. 2. And it is further enacted, that the right of way through the public lands be, and the same is hereby granted to said company for the construction of the said railroad and telegraph line; and the right, power and authority is hereby given to said company to take from the public lands adjacent to the line of said road, earth, stone, timber and other materials for the construction thereof; said right of way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass over the public lands, including all necessary grounds for stations, buildings, workshops, and depôts, machine-shops, switches, side-tracks, turn-tables, and water stations. The United States shall extinguish as rapidly as may be, the Indian titles to all lands falling under the operation of this act, and required for the said right of way and grants hereinafter made.

"Sec. 3. And be it further enacted, that there be, and is hereby, granted to the said company, for the purpose of aiding in the construction of said railroad and telegraph line, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores thereon, every alternate section of public land, designated by odd numbers, to the amount of five alternate sections per mile on each side of said railroad, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached, at the time the line of said road is definitely fixed; provided, that all mineral lands shall be excepted from operations of this act; but where the same shall contain timber, the timber thereon is hereby granted to said company. And all such lands, so granted by this section, which shall not be sold or disposed of by said company within three years after the entire road shall have been completed, shall be subject to settlement and pre-emption, like other lands, at a price not exceeding one dollar and twenty-five cents per acre, to be paid to said company.

"Sec. 7. And be it further enacted, that said company shall file their assent to this act, under the seal of said company, in the department of the interior, within one year after the passage of this act, and shall complete said railroad and telegraph from the point of beginning, as herein provided, to the western boundary of Nevada territory, before the first day of July, one thousand eight hundred and seventy-four; provided, that within two years after the passage of this act, said company shall designate the general route of said road, as near as may be, and shall file a map of the same in the department of the interior, whereupon the secretary of the interior shall cause the lands within fifteen miles of said designated route or routes to be withdrawn from pre-emption, private entry, and sale; and when any portion of said route shall be finally located, the secretary of the interior shall cause the said lands hereinbefore granted, to be surveyed and set off as fast as may be necessary for the purposes herein named; provided, that in fixing the point of connection of the main trunk with the eastern connections it shall be fixed at the most practicable point for the construction of the Iowa and Missouri branches, as hereinafter provided."

The ninth section authorized the plaintiff "to construct a railroad and telegraph line from the Pacific coast, at or near San Francisco or the navigable waters of the Sacramento river, to the eastern boundary of California, upon the same terms and conditions in all respects" as were contained in the act for the construction of the Union Pacific railroad and telegraph line, and to meet and connect with said railroad and telegraph line on the eastern boundary. The tenth section authorized the plaintiff, after completing its road across the state of California, "to continue the construction of said railroad and telegraph through the territories of the United States to the Missouri river, including the branch roads specified" in the act, upon the routes therein indicated, on the terms and conditions provided in the act in relation to the Union Pacific Railroad Company, until said roads should meet and connect, and the whole line of said railroad and branches and telegraph was completed.

On the second of July, 1864, congress passed an act [13 Stat. 364] to amend the act of July 1, 1862, by increasing the grant of alternate sections made in the act of 1862, from five to ten, and extending the limits within which the sections were to be selected to twenty miles on each side of the road, and by extending the distance from the designated route of the road within which lands were to be withdrawn from pre-emption, private entry and sale by the seventh section of the act of 1862, from fifteen to twenty-five miles. 13 Stat. 358.

The defendants demurred to the bill of complaint for the want of equity, and for misjoinder of defendants. The latter point was argued on the ground that the bill averred that the defendants claimed sepa-

rate and distinct parcels of land under separate purchases made by them.

Thomas H. Williams, for defendants.
Sunderland & Wood, for plaintiff.

Before FIELD, Circuit Justice, and HILL-YER, District Judge.

FIELD, Circuit Justice. The plaintiff, the Central Pacific Railroad Company, a corporation created under the laws of California, brings the present suit against a large number of persons, who are citizens of the state of Nevada, to determine the estate and interest claimed by them in the land over which the line of the railroad constructed by the company runs, between the boundary of Nevada and the Big Bend of Truckee river in that state.

The plaintiff was incorporated in June, 1861, for the purpose of constructing and maintaining a railroad from the city of Sacramento, in California, to the eastern line of the state, where that line crosses the Truckee river, and to form a continuous railroad connection between the navigable waters of the Sacramento river and the Missouri river, and for that purpose to construct and maintain a railroad through the then territory, now state of Nevada, and other territories lying between California and the Missouri river.

On the first of July, 1862, congress passed an act [12 Stat. 491] to aid in the construction of a railroad from the Missouri river to the Pacific ocean, and by its provisions the plaintiff was authorized, after completing its road across the state of California, to extend its construction through the territories of the United States eastwardly until it should connect with the road which the Union Pacific Railroad Company, a corporation created by the same act, was authorized to construct westwardly from a designated point in the territory of Nebraska.

By this act, the right of way was also granted the plaintiff through the public lands of the United States for the construction of the road, to the extent of two hundred feet on each side of the track, with the right to take from the public lands adjacent all needed earth, stone, timber, and other materials. The right of way included all necessary ground for stations, buildings, work-shops, depots, machine-shops, switches, side-tracks, turn-tables and water-stations which the plaintiff might require for the use and maintenance of the road.

Under the right and authority thus conferred by the legislation of the state and of the United States, the plaintiff has not only laid out and constructed a railroad from the city of Sacramento to the eastern line of the state of California, but has extended the road through the state of Nevada and the territory of Utah to its connection with the road of the Union Pacific Railroad Company —thus forming a completed road between the navigable waters of the Sacramento river and the Missouri river. This we know as matter of history. The bill of complaint, however, only alleges, in addition to the construction of the road across the state of California, that the plaintiff has laid out and constructed the road from the eastern line of that state where it crosses the Truckee river, eastwardly, in the state of Nevada, along that river to what is known as the "Big Bend" thereof, a distance of forty-seven miles. With respect to this position of the road in the state of Nevada, the bill avers, in substance, that the plaintiff has expended in its construction more than two millions of dollars; that all the lands through which it passes were, at the time of the passage of the act of congress, and the location of the road, public lands of the United States, and subject to the grant of the government for the use of the railroad; that the plaintiff is in its possession, maintaining and using it in the transportation of passengers, freight and the mails of the United States; that the plaintiff has erected near the line of the road and within two hundred feet of the track on either side, at convenient places and points, divers work-shops, machine-shops, side-tracks, and turn-tables, water stations and depots; and has made various excavations and taken wood, stone, earth and other material, and has used the same in the construction of the road; that the defendants claim, and each of them claims, to own some estate or interest in the land over which the road passes and upon which the track is laid, and in the public lands adjacent thereto, and the portions upon which the work-shops, side-tracks, turn-tables and switches have been constructed and the stations and depots have been established, adverse to the interest and title of the plaintiff, which estate and interest they claim, and each of the defendants claims, to have acquired by purchase from the government of the United States, subsequent to the grant to the plaintiff.

The bill further avers, upon information and belief, that the defendants claim the land over which the road passes, and their estate and interest in the same, in distinct parcels or quantities, but that the particular quantities claimed by each are unknown to the plaintiff; that they threaten and intend to bring distinct actions at law, based solely upon such pretended purchases, to recover damages from the plaintiff, for alleged trespasses upon and injuries to the property, and thus to involve the plaintiff in a multitude of suits.

The bill further avers that the estate and interest claimed by the defendants and each of them are invalid and subordinate to the grant to the plaintiff, and the rights the grant conferred; and concludes with a prayer that the defendants may be required to set out the estate and interest claimed; that the same may be decreed invalid and subordi-

nate to the right and title of the plaintiff; and that the defendants may be enjoined from setting up or asserting any right, estate or interest in the said lands, and from bringing any action for damages by reason of the construction of the road and the excavations within two hundred feet of the track, and the construction of the buildings and other works of the company; and for such further and other relief as the nature of the case may require.

The suit is evidently founded upon a statute of the state of Nevada, which declares that "an action may be brought by any person in possession, by himself or tenant, of real property, against any person who claims an estate or interest therein adverse to him, for the purpose of determining such adverse claim, estate or interest." Act March 8, 1869 (regulating proceedings in civil cases), § 256. The term "action" in that state includes not merely proceedings at law, but suits for equitable relief. It is for relief of that character that the present bill is filed.

The bill is in substance a bill of peace—its object being to quiet the title of the plaintiff, and to prevent harassing and expensive litigation from a multiplicity of suits. The jurisdiction of equity to afford relief in such cases is undoubted. The statute, it is true, enlarges the classes of cases in which the jurisdiction was formerly exercised in quieting the title and possession of real property. It dispenses with the necessity of the previous establishment of the right of the plaintiff by repeated judgments in his favor in actions at law. Curtis v. Sutter, 15 Cal. 259; Stark v. Starrs, 6 Wall. [73 U. S.] 409. To that extent it confers upon the possessor of real property a new right, one which enables him, without the delay of previous proceedings at law, to draw to himself all outstanding inferior claims. That right the national courts will enforce in the same manner in which they will enforce other equitable rights of parties. This was held in Clark v. Smith, 13 Pet. [38 U. S.] 203, where the bill was filed to enforce an act of Kentucky, which authorized a person having both the title and possession of land to institute a suit against any other person setting up a claim to the property, and provided that if the plaintiff established his title, the defendant should be decreed to release his claim, and pay the costs of the complainant, unless by his answer he disclaimed all title to the premises, and offered to release to the complainant. "The state legislature," said the court, "have no authority to prescribe the forms and modes of proceeding in the courts of the United States, but having created a right, and at the same time prescribed the remedy to enforce it, if the remedy prescribed is substantially consistent with the ordinary modes of proceeding on the chancery side of the federal courts, no reason exists why it should not be pursued in the same form as it is in the state courts; on the contrary, propriety and convenience suggest that the practice should not materially differ when titles to lands are the subjects of investigation."

The jurisdiction would therefore exist in the present case if there were only one defendant asserting an interest or estate adverse to the plaintiff, but the fact that there are numerous defendants claiming distinct and separate parcels by a similar title, and threatening distinct actions for injuries to their respective parcels, furnishes a further ground for entertaining the bill. A court of equity will always interfere to prevent a multiplicity of suits, when the rights of the parties can be fairly determined by a single proceeding. Crews v. Burcham, 1 Black [66 U. S.] 352.

The objection taken by demurrer, that the defendants are improperly joined, or more correctly speaking, that the bill is multifarious, because it is averred therein that the defendants claim separate and distinct parcels, is not well taken. The bill alleges that the rights of the plaintiff come from the act of congress, and that the interests claimed by defendants come from pretended subsequent purchases from the government. The plaintiff asserts that upon the passage of the act, the lands through which the road passes were public lands, subject to the disposal of the United States for the purposes of the railroad. The principal question therefore, involved, upon the allegations of the bill, is when did the grant to the plaintiff take effect? and its determination equally concerns all the defendants. If the grant took effect immediately, the subsequent purchasers from the government must necessarily have taken the lands held by them in subordination to the rights which it conferred. They are all in consequence alike interested in defeating any pretentions of this kind.

In Mayor of York v. Pilkington, 1 Atk. 282, the plaintiff claimed the sole right of fishery in the river Ouse, and brought a bill to quiet the right against several riparian proprietors on the river claiming distinct rights. It was objected that the defendants ought to be considered as distinct trespassers; that there was no general right to be established against them; and that there was no privity between them and the plaintiff. But Lord Hardwicke sustained the bill, observing that the question was whether the plaintiff had a general right to the sole fishery which extended to all the defendants, and that the defendants were not precluded from taking advantage of their several exceptions or distinct rights.

In Gaines v. Chew, 2 How. [43 U. S.] 640, the bill was filed to set aside a will, and made the executors and all persons who had come into possession of the property of the alleged testator by purchase or otherwise, parties. The purchases were made at different times and for different parcels of

the property. To the objection that there was misjoinder or multifariousness in the bill in making the defendants parties, the court said that the main ground of defense, the validity of the will attacked and the proceedings under it was common to all; that their interests might be of greater or less extent, but that constituted a difference in degree only, and not in principle; that in every fact which went to impair or establish the authority of the executors, the defendants were alike interested, and that the bill avoided multiplicity of suits without subjecting the defendants to inconvenience or unreasonable expense. The objection was therefore overruled. In considering the subject of multifariousness, the court cited the language of Lord Cotttenham in Campbell v. Mackay, 1 Mylne & C. 603, that "to lay down a rule applicable universally, or to say what constituted multifariousness as an abstract proposition, is upon the authorities utterly impossible," and observed that "every case must be governed by its own circumstances; and as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject. Whilst parties should not be subjected to expense and inconvenience in litigating matters in which they have no interest, multiplicity of suits should be avoided by uniting in one bill all who have an interest in the principal matter in controversy, though the interests may have arisen under distinct contracts."

As already intimated, the real question presented by the case is, when did the right of way to the extent of two hundred feet on each side of the road, vest, under the act of congress, in the plaintiff? The defendants contend that the grant of the right of way was subject to the same limitation which is prescribed by the act to grants of the alternate sections, namely, that the land designated was not reserved or otherwise disposed of by the United States, or that a pre-emption or homestead claim had not attached to it at the time the line of the road was definitely fixed; and hence it is argued that the bill, in averring that the defendants' claim, by purchases made from the government subsequent to the passage of the act of congress, does not negative all possible right in them, as they may still have acquired their interests before the definite location of the road.

The construction for which the defendants thus contend is clearly incorrect. The grant of the right of way is a present grant, operating immediately upon the passage of the act, without reservation or exception, and is subject to no conditions except those which are subsequent, or necessarily implied, such as that the road shall be constructed within the period specified, and be afterward maintained and used for the purposes designated. All acquisitions of land over which this right of way was thus granted, made subsequent to the passage of the act, were necessarily subject to the exercise of this right. The reservations and exceptions found in the third section, apply only to the grants of land therein mentioned, and do not apply to the grant of the right of way made in the second section.

The provision of the seventh section requiring the plaintiff, within two years, to designate the general route of the road as near as might be, and file a map of the same in the department of the interior, in no respect affected the grant of the right of way; it only furnished the means by which the secretary could withdraw the lands within a specified distance of such designated route from pre-emption, private entry and sale.

It follows that the objection to the bill founded upon this construction of the act falls to the ground. The demurrer must, therefore, be overruled, and the defendants be required to answer the bill by the rule-day in November next. Ordered accordingly.

---

CENTRAL PAC. R. CO. (HUNTINGTON v.). See Case No. 6,911.

CENTRAL PAC. R. CO. (QUIGLEY v.). See Case No. 11,510.

CENTRAL PAC. R. CO. (RYAN v.). See Case No. 12,185.

CENTRAL PAC. R. CO. (UNITED STATES v.). See Case No. 14,763.

CENTRAL PAC. R. CO. (VAUGHAN v.). See Case No. 16,897.

CENTRAL R. CO. (CLYMER v.). See Case No. 2,912.

CENTRAL R. CO. (LEHIGH COAL, ETC., CO. v.). See Case No. 8,213.

CENTRAL R. CO. OF NEW JERSEY (GOODYEAR v.). See Case No. 5,563.

CENTRAL R. CO. OF NEW JERSEY (MACKAY v.). See Case No. 8,842.

CENTRAL RAILROAD OF IOWA (ALEXANDER v.). See Case No. 166.

CENTRAL RAILROAD OF IOWA (FARMERS' LOAN & TRUST CO. v.). See Cases Nos. 4,663 and 4,664.

CENTRAL RAILWAY (CURTIS v.). See Case No. 3,501.

CENTRAL VERMONT R. CO. (WELLS v.). See Case No. 17,390.