A. & W. SPRAGUE MANUF'G Co. and another *v.* HOYT and others.

(*Circuit Court, D. Connecticut.* December 18, 1886.)

1. PARTNERSHIP—PARTNERSHIP PROPERTY—TITLE IN PARTNER—HEIRS SUBJECT TO PARTNERSHIP TRUST.

   A. S. and W. S. were partners under the name of A. & W. S. A. S. died, and, by the agreement of his administratrix, his wife, the business was continued under the same name, with the joint capital, and as the joint property, under the management of W. S. W. S. purchased, with joint funds, for the partnership, the B. M. property, on which a factory was erected, on which was expended $1,000,000 of the partnership funds, and took the deeds in his own name. After taking into the partnership his son and two nephews, he died, leaving, among others, four minor heirs, children of his daughter.

Subsequently the partnership was changed into a corporation, and the various interests in the property conveyed to the corporation in exchange for stock, all by the consent and agreement of all interested; the minors being represented in the transaction by their legally appointed guardian. Afterwards the corporation failed, and its property was conveyed to plaintiff in trust for its creditors. Plaintiff, by this bill, seeks to restrain the said minor heirs from bringing ejectment on the ground that the conveyances as to them were unauthorized, and for a decree giving him the legal title. *Held,* that W. S. held the legal title subject to the partnership trust, and that the heirs received the same subject to the trust.

2. SAME—PARTNERSHIP REALTY, FOR PARTNERSHIP PURPOSES, PERSONALTY.
*Held, also,* that, for the purposes of the partnership, the real property was personalty.

3. SAME—CORPORATION FORMED OF PARTNERSHIP TAKES ITS EQUITIES IN REALTY.
*Held, also,* that the corporation having been formed by consent out of the partnership, the corporation taking the property as well as the debts of the firm, and the owners having the same interest in the property of the corporation that they had had in the partnership, the transaction gave the corporation the same equitable estate in the property in question that the partnership had had.

4. EQUITY — DECREE — CONVEYANCE OF TITLE — POWER OF UNITED STATES COURTS.
*Held, also,* that courts of equity of the United States for the district of Connecticut, having the power to administer the remedies provided by a statute of the state of Connecticut, and by virtue of that statute to vest the title to real estate by decree, without any act of the respondent, the trustee is entitled to a decree vesting in him the legal title to the estate.

In Equity.

*Charles E. Perkins,* for plaintiffs.

*James McKeen* and *Thomas E. Stillman,* for defendants.

SHIPMAN, J. The defendants William S. Hoyt, Edwin Hoyt, Sarah H. Lee, and Susan S. Francklyn, being the four children of Mrs. Susan Sprague Hoyt, who was a daughter of William Sprague, Sr., together with the husbands of Mrs. Lee and Mrs. Francklyn, brought in the superior court for New London county four actions of ejectment against the complainants, each suit demanding the seizin and peaceable possession of one undivided eighth part of certain tracts of land in the town of Sprague, in this state, forming what is known as the "Baltic Mill Property," together with the water-power and water-rights appurtenant thereto. · Edwin Hoyt's suit was brought by his next friends, he being alleged to be a person of unsound mind. These suits were removed to this court, and are now pending therein.

This is a bill in equity by the defendants in the actions at law to enjoin the plaintiffs therein from further proceedings in said ejectment suits, and to compel the respondents to convey to the complainants the legal title in said real estate which is now vested in the respondents, or to have the same vested in the complainants by decree of this court.

Nearly all the facts in this case are stated in the opinion of the supreme court in *Hoyt* v. *Sprague,* 103 U. S. 613. The partnership, in the business of manufacturing, of Amasa Sprague and William Sprague, Sr., under the name of A. & W. Sprague, before the year 1843; the death of Amasa Sprague, in 1843, leaving a widow, Fanny Sprague, who was his

administratrix, and two sons, Amasa and William, and two daughters; the continuance, under the same name, of said business, with the joint capital, and the enlargement of the business, and of the joint property, under the active management of William Sprague, Sr.; his purchase of the interest of one of the daughters of Amasa; the taking into partnership, shortly before the death of William, Sr., of his son, Byron, and Amasa Sprague and William Sprague, the two sons of Amasa, Sr.; the death of William Sprague, Sr., intestate, in October, 1856, leaving a widow, Mary Sprague, who was his administratrix, one son, Byron Sprague, and the four children of his deceased daughter, Mrs. Hoyt, who are the present defendants; the non-settlement of the estate of William Sprague, Sr.; the continuance of the firm of A. & W. Sprague by Byron, Amasa, and William, Jr., with the consent of the two administratrixes and Edwin Hoyt, the father of said children, that the partnership estate should be continued in the business of the firm as before; the purchase by Amasa and William, in 1862, of the interest of Byron and the other daughters of Amasa, Sr., so that the only persons thereafter interested in the firm property were the widows of Amasa, Sr., and William, Sr., Amasa, and William, Jr., and the defendants; the appointment, in February, 1857, by the probate court for the town of Warwick, of Mary Sprague, the grandmother of said four children, as their guardian; the chartering, in 1862, of the A. & W. Sprague Manufacturing Company; its organization, in 1865, for the purpose of holding and managing all the property of the firm, except that which was known as the "Quidnick Company Property;" the petition of Mary Sprague, guardian of the four defendants, and of Edwin Hoyt, their father, to the legislature of Rhode Island, asking authority to vest in the corporation to be formed the title of the said four children in the firm property of A. & W. Sprague; the resolution giving said authority; the important agreement of April 1, 1865, appointing Messrs. Thurston and Gardner referees to examine the entire property of said firm, ascertain its value, and the amount of each party's interest therein; the report of said referees; the order of the court of probate, upon the petition of Mary Sprague, guardian, empowering her to make conveyance to the A. & W. Sprague Manufacturing Company of all the right and title which said four children had in and to the property and assets of A. & W. Sprague other than the Quidnick property; the conveyance, on August 9, 1865, by Fanny Sprague, individually and as administratrix, by Amasa and William Sprague, and by Mary Sprague, individually and as administratrix,—and as guardian, of all the property of said firm, except the Quidnick property, to said corporation; the allotment of stock therein to said guardian in accordance with their interest in said property; the settlement of the guardian's account; the delivery to Sarah S. Hoyt of the amount of their interest in the estate; sundry facts in regard to the acquiescence of William S. Hoyt and his two sisters in the transfer of the property in Rhode Island to said corporation; the subsequent insolvency of said corporation, in 1873; and the conveyance to said Chafee, in trust for its creditors,—are stated in said opinion.

On April 17, 1847, Fanny Sprague, acting for herself and her minor children, and Mary Anna Sprague, one of her daughters, agreed with William Sprague, Sr., that he might retain the possession of all the partnership property, and use and employ the same in the prosecution of the business formerly carried on by said firm of A. & W. Sprague, using the firm name, and conducting the business for the mutual benefit of himself and of the widow and children of Amasa Sprague, until September 12, 1851. This contract was subsequently ratified by Almira Sprague, the daughter of said Amasa.

William Sprague, Sr., purchased, with copartnership or joint funds, and for the business of A. & W. Sprague, the lands now known as the "Baltic Mill Property," between June 20, 1856, and September 30, 1856, received deeds thereof in his own name, and commenced, in the summer of 1856, to build an extensive factory thereon as a part of the joint property. The mill was completed by the firm in 1857, after the death of said William, Sr., and about a million dollars of partnership money was expended thereon. The manufacture of print cloths was carried on there, both by the firm and by the corporation, until the failure of the latter, in 1873. These cloths were "finished" at the print-works of the firm, in Rhode Island.

The referees appraised the Baltic mill property, and included its valuation in the assets of the firm. The property went into the possession of the corporation under the conveyance of August 9, 1865, and was thereafter managed by it, as its own, until its failure, and was then conveyed to said Chafee, who entered into possession thereof, and expended upon it about $250,000 in the repairs of extensive damages which were caused by a flood.

In deciding that, after the death of William Sprague, Sr., in 1856, the entire partnership estate continued in the business of the firm, as it had been before, with the consent of those primarily beneficially interested, and without fraud; and that by such continuance, with consent, "the property became liable to the partnership debts subsequently incurred, as well as to prior debts;" and that Mary Sprague, as guardian, was authorized by the legislature of Rhode Island, and by the probate court, to convey the interest of her wards in all property situate in Rhode Island to the A. & W. Sprague Manufacturing Company, by way of investing the said interest in its capital stock; and that her conduct was without fraud; and that the proceedings taken by the parties to effect a transfer of the partnership estate to the corporation were substantially regular,—the supreme court disposed of nearly all the important questions which exist in this case.

The defendants insist that the property which is the subject of this suit is real estate situate in Connecticut, and that neither the legislature of Rhode Island, nor the probate court, had the power to authorize Mrs. Mary Sprague, as guardian, to convey the real estate of her non-resident wards' which was situate in another state. If the defendants, at the time of the conveyance, owned real estate in Connecticut, the plaintiffs concede that the deed of Mrs. Sprague, either as administratrix or as their

Rhode Island guardian, could not convey such land.    It is furthermore conceded that they had the legal title, but it is contended that it was a bare legal title; that the land was partnership assets, and was and is, for all partnership purposes, to be treated as personal property; that the equitable title was vested in the corporation by the deed of the surviving partners and of Mrs. Mary Sprague, as administratrix; that Mr. Chafee is properly vested with the same title; and that the defendants should be compelled to convey to him the legal title also.

The defendants insist that the English rule of an "out and out" conversion of real estate, which was purchased with partnership funds for partnership purposes, absolutely into personal estate, does not exist here, and that, by the established doctrine of the courts of this country, the tenure of partnership real estate which stands in the name of a deceased partner will not be disturbed in equity, except so far as is necessary to pay partnership debts, and adjust the rights of the partners between themselves, which was not attempted to be done in this case.    But they say that neither the English nor the American rule is pertinent here, because the property was not, accurately speaking, partnership capital. It was purchased by William Sprague, Sr., and the entire business was carried on by him alone, for the benefit of himself and his brother's family.    They further say that although, in its inception, this real estate was not, accurately speaking, partnership capital, they do not dispute that the same reasons which lead courts of equity to treat such capital invested in real estate as personalty, in settling partnership affairs, would have led to the treatment of this as personalty, in a suit which might have been instituted to wind up the business; but no such proceeding was taken.    They further say that it may be that a valid adjustment of accounts could have been made between the administratrix and the surviving partners which would have involved a release, valid in equity, of her deceased husband's interest in the Baltic mill property, but nothing of that kind was done or attempted; that, in the contemplation of all the parties, the estate of the children in the mill was completely vested in them, and the attempt was to put the title thereto in the corporation by a direct transaction with the Rhode Island guardian. They say that, in so far as William Sprague, Sr., was the owner in his own right of this property, the title thereto, legal and equitable, went to his heirs; so far only as he was a trustee for others, to that extent his heirs are trustees.

I do not think that much importance can be given to the fact that when the mill-site was purchased William Sprague, Sr., was a sole surviving partner.    The land was bought between June 20, 1856, and September 30, 1856, with the funds of A. & W. Sprague, for the enlargement of its manufacturing business, and became liable for its debts.    Shortly before Mr. Sprague's death, which occurred October 19, 1856, he took his son, Byron, and his two nephews, into partnership.    The precise date does not appear, but it was probably after October 1, 1856.    The mill and all its appurtenances were afterwards completed by the surviving partners, at a total expense of $1,000,000, paid from partnership

funds; and was managed as a part of the extensive manufacturing business of the firm. There was no separation of the Baltic property, as possessing a distinct character, from the rest of their property, and no valid distinction can be made between this mill and the Rhode Island mills of the firm, which were built between 1843 and 1856. All were equally and alike partnership assets; and the interest of the Hoyt children in the Connecticut property was, both at and before the transfer to the corporation, properly regarded as of the same character as their interest in the Rhode Island estate; that is, it was an interest in partnership stock.

The next question is as to the effect of the conveyance by the surviving partners and Mary Sprague, as administratrix, upon the children's interest in the Baltic mill property. It is not necessary to consider whether the English rule in regard to partnership real estate has been or can be adopted in its entirety in this country. The principle which underlies the decisions of the supreme court and of state courts of high authority is sufficient to control the case.

In *Shanks* v. *Klein*, 104 U. S. 19, which was a bill in equity to restrain the executor of the deceased partner from prosecuting actions of ejectment against the purchasers of partnership land from the surviving partner, which had been sold by him to pay partnership debts, the court says that the right of the surviving partner is an equitable right, accompanied by an equitable title, and is an interest in the property which courts of chancery will recognize and support; and in reply to the question, "What is the right?" the court further says, "Not only that the court will, when necessary, see that the real estate so situated is appropriated to the satisfaction of the partnership debts, but that for that purpose, and to that extent, it shall be treated as personal property of the partnership, and, like other personal property, pass under the control of the surviving partner. This control extends to the right to sell it, or so much of it as is necessary to pay the partnership debts, or to satisfy the just claims of the surviving partner." It is not to be supposed that the court meant that the land is to be treated as personalty only when its avails are required to pay partnership debts, or to satisfy the claims of the surviving partner. The language is used with reference to the facts of the case which was under discussion, and the principle is of somewhat broader scope. Accordingly, in *Allen* v. *Withrow*, 110 U. S. 119, S. C. 3 Sup. Ct. Rep. 517, the court say: "Real property owned by a partnership, and purchased with partnership funds, is, for the purpose of settling the debts of the partnership, and distributing its effects, treated in equity as personal estate." In *Foster's Appeal*, 74 Pa. St. 391, the court says that the reconversion of partnership real estate to its condition as land takes place when the partnership is dissolved, wound up, and completely ended.

The principle of the various cases is that real estate bought for and applied to partnership uses, with partnership funds, is, after the death of one of the partners, to be treated in equity as personal property, for all the proper and necessary purposes, needs, and requirements of the partnership. How the part which remains after the partnership needs are

satisfied is to be distributed it is not necessary to consider.   Pars. Partn. (1st Ed.) 371–373; *Buchan* v. *Sumner*, 2 Barb. Ch. 167 ; *Tillinghast* v. *Champlin*, 4 R. I. 173; *Way* v. *Stebbins*, 47 Mich. 296; S. C. 11 N. W. Rep. 166; *Shearer* v. *Shearer*, 98 Mass. 107.

The partnership property, business, and debts of A. & W. Sprague had become too large, in the year 1865, to be continued in the name of individuals, whose lives must terminate.   The assets of the firm were over $6,700,000, the liabilities were $2,870,000, leaving the net value of the estate about $3,860,000.   The business of the firm was manufacturing, which required the ownership of mills and real estate.   It was manifestly impracticable to continue, as a firm, to manage real property of this magnitude, some of which stood in the name of deceased partners, and the rest of which must stand in the name of individuals.   If the business was to be continued, the partnership must be converted into, and the assets must be transferred to, a corporation, and the various interests of the members of the copartnership, of the administratrixes, and of the tenants in common of the real estate, must be represented by stock.

All the persons interested in the estate, who were capable of contracting, agreed that the business should be continued, and that a corporation should be formed.   The minors were represented by their guardian and their father, both of whom, as is manifest by their petition to the general assembly of Rhode Island, were desirous that the partnership should be turned into a corporation, and that the property of the minors should be continued therein, and should be represented by stock.   The fact that the two persons who represented the children, and were in a position to act in their behalf, united, earnestly and honestly, with all the persons of full age who had any interest in the partnership, in its conversion to a corporation, is a fact of vital importance; for it is not by any means supposed that surviving partners can, by their own unaided act, transfer the real estate of the minor heirs of a deceased partner to a corporation, and compel them to become stockholders therein.   The same consent was, in this case, given to the transfer of the real estate to the corporation which was given to the continuance of the partnership estate in the business of the firm after the death of William Sprague, Sr., and was given for the same reason, viz., the supposed benefit of the minors.

The corporation was organized for the purpose of placing and vesting in it the property of the firm subject to its liabilities.   By the deed of the surviving partners, and of the administratrixes of the deceased partners, the equitable title to the real estate was conveyed to the corporation, and it assumed debts of nearly $3,000,000 which rested upon the estate.   The respective interests of the partners and owners in the assets, less the amount of the debts, were manifested in the form of stock, of which each received his or her proportional share.   The transaction was the formation, by consent, of a corporation out of a copartnership; the corporation taking the property as well as the debts of the firm, the owners having the same interest in the property of the corporation that they formerly had in the partnership property.   The equitable title thus

transferred remained in the corporation until its failure, in 1873, when it made an assignment of all its property to Mr. Chafee for the benefit of its creditors.

The grandchildren attained their majority as follows: Mr. Lee in October, 1866; Mrs. Francklyn in October, 1866; William T. Hoyt in January, 1868; and Edwin Hoyt in July, 1870. The actions of ejectment were brought on October 1, 1879.

I do not deem it necessary to consider any questions of estoppel against the right of the three elder children to maintain their actions of ejectment, growing out of the fact that they accepted the dividends upon their stock, and might have known, "had they used the means and opportunities directly at their command," that the Baltic property, situate in Connecticut, was claimed to be a part of the assets of the corporation, nor shall I consider the questions growing out of the alleged incompetency of Edwin Hoyt to acquiesce in any disposition of his property, because my conclusion is that the Baltic property was, from the time of its purchase, partnership property, and liable for its debts, and that, subject to the payment of the debts of the firm, it properly became a part of the assets of the corporation in 1865, and that thereafter only a bare legal title remained in the four children of Mrs. Hoyt, which title it is competent for a court of equity to direct to be released to its equitable owner.

A statute of Connecticut provides that "courts of equity may pass the title to real estate by decree, without any act on the part of the respondent, when, in their judgment, it shall be the proper mode to carry the decree into effect; and such decree, having been recorded in the records of lands in the town where such real estate is situated, shall, while in force, be as effectual to transfer the same as the deed of the respondent or respondents." Courts of equity of the United States for this district have the power to administer this remedy. *Fitch* v. *Creighton*, 24 How. 159; *In re Broderick's Will*, 21 Wall. 503; *Central Pac. R. Co.* v. *Dyer*, 1 Sawy. 641.

Let there be a decree enjoining against the prosecution of said actions of ejectment, and vesting in Mr. Chafee the legal title to said estate.