## HYMAN *v.* WHEELER *et al.*

*(Circuit Court, D. Colorado. January 13, 1888.)*

**EQUITY—PARTIES DEFENDANT—DEMURRER—UNITY OF INTEREST.**

A bill in equity showing that complainant owned a mine, the mineral vein of which had its apex within complainant's boundaries, but in descending deflected and passed out of his side lines; that defendants, of whom there were a number, were threatening litigation on claims to the vein in various forms; that defendants' claims, though differing between themselves, were all subordinate to plaintiff's claim; and seeking equitable relief,—is not demurrable as showing no unity of interest in defendants, and no equity in complainant.

In Equity. On demurrer to bill.

Bill in equity by Hyman, complainant, against Wheeler and others, defendants.

*C. J. Hughes, Jr.*, for complainant.

*Geo. J. Boal, C. S. Thomas, R. S. Morrison,* and *L. C. Rockwell,* for defendants.

BREWER, J. This is a bill in equity to which a demurrer or several demurrers have been filed. The complainant alleges briefly that he is the owner of the Durant mine, and the vein which has its apex within its surface boundaries; that such vein, descending, deflects so as to pass out from the side lines of the Durant; and that he has opened that vein and followed it for, I believe, the space of 800 feet, passing outside of the lines of the Durant location, and that he is in possession of that vein thus opened; that these defendants, of whom there are quite a number, representing nine different interests, having claims of location on the surface adjacent or near to the Durant, and above this vein which he has opened, and which he claims to be in possession of, are threatening litigation in various forms; also as to some of the parties that they threaten to worry and wear out the plaintiff by excessive and continued litigation, so that practically the value of his property will be lost to him; and alleges that as to all these various defendants their claims, different though they may be between themselves, are all subordinate to his single title, and his rights, and are assertions of claims which cast a cloud upon his possession and title, and prevent him from the peaceable enjoyment of the fruits of ownership; and seeks, as a relief, that they be enjoined and restrained from instituting these various suits in different courts, and be called upon to come into this case, and set up their titles, and have them all asserted and determined in one litigation. The defenses presented, or the principal ones, are multifariousness in the bill, and a want of equity.

It is claimed by counsel that there is no unity of interest on the part of the various defendants; that because one man has a claim to one piece of ground, and from that asserts title to a portion of this vein, his controversy with the plaintiff is entirely independent and distinct from the controversy with another man, who has another piece of ground, and upon his claim to that ground asserts a right to perhaps a distinct portion of this vein. Very many authorities were presented and discussed. I think it impossible to harmonize them all, and therefore do not stop to comment upon them. The case of *Railroad Co.* v. *Dyer,* 1 Sawy. 641, contains what to my mind is very wholesome and salutary doctrine in respect to these matters. It lays down the proposition that where there is a single title to a continuous property, and that title rests upon one state of facts, one grant; and there are many persons who, with inferior titles or claims, are threatening litigation, although their claims may spring from different sources,—a court of equity has power, in order to give to the holder of this single property the full enjoyment of his property, to summon all such parties into a single suit, and in that by decree establish the plaintiff's title, and restrain all the defendants from further litigation or interference. It is the only way oftimes where a man can be protected in the beneficial enjoyment of his property. If each individual claimant—as, in that case, a number of squatters along

the line of a railroad—were permitted to maintain his independent action against the railroad company, the cost and the time and the worry of the litigation would seriously impair the value of the grant to the company; and so, according to the statements that are made here, with a knowledge of the expensiveness of this mining litigation and the length to which it may be continued, it may well be, as the complainant asserts, that if every claimant is permitted to carry on his separate action of ejectment, with the two and possibly three trials which the law gives therein, the value of the property, which the government has granted him, will be practically destroyed. I think, therefore, that following that decision, it cannot be said that the fact that these defendants have various interests prevents a court of equity from calling them in.

Neither can it be said that there is no equity in the bill. Equity discountenances a multiplicity of suits,—that is one of the grounds of its jurisdiction; and it aims, by restraining a multiplicity of suits, to give to the owner of the property the beneficial enjoyment of it, and to enable him to get the benefit of its ownership, rather than waste it in many and diverse suits. A great many other matters were suggested which seem to me would come up more pertinently for inquiry when answers have been filed, and testimony taken. It is said that to uphold the jurisdiction of the court of equity in this case would be to deprive these claimants of the jury trial guarantied to them by the constitution. It may be that in some cases when the testimony is presented there will appear such a doubtful question of facts that the chancellor will say this ought to go to a jury, and decline to entertain further jurisdiction.

As the bill now stands upon these averments, the complainant has an absolute undoubted title, a perfect title, and is in possession. It may be, as suggested by counsel, that his possession is not actual,—that he does not have any real possession of this vein in its extension beyond his side lines; all those facts will come out in an answer. It may be that this vein, as suggested by one counsel, instead of being single and continuous, is found divided into half a dozen sheets, so that it is impossible or difficult to say as to any one of those sheets whether it is a continuation of the original vein or of some other vein having its apex in other boundaries. All those facts may be developed by answer and proof, and it may well be that in one case or another there will be disclosed such a doubtful question of fact that a chancellor may properly say that here is a question which he will not determine, and it must be relegated to a jury; but none of these things appear now. It is time enough to consider those questions when the facts present them. I think, therefore, taking the bill with its averments as true, there is jurisdiction in the court as a court of equity to take cognizance of this bill, and to call upon the defendants to answer.

It is suggested by one of the counsel that a special ground of demurrer is presented in regard to one of the bases of jurisdiction in this court. Jurisdiction is averred on the ground of citizenship, and there is an attempt, also, to disclose a federal question; and it is said that the allegations of the bill do not disclose a federal question, and therefore the de-

murrer should be sustained, as a special demurrer to that part of the bill. The demurrers are all to the bill as a whole, not directed in terms to any part of the bill, although there is among the grounds of demurrer set-out specially the fact that this federal question is not so stated as to disclose the existence of a federal question. Hence there would be no practical advantage in considering that matter separately. The difference of citizenship is stated fully and satisfactorily. In all equity cases we ought to go to the substance of things as far as possible. ·

The demurrer will be overruled, and leave given to file answers.