## SMITH v. BIVENS et al.

### (Circuit Court, D. South Carolina. May 19, 1893.)

1. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—FENCES.
    Complainant owned a tract of land which was valuable solely for grazing purposes, and from which he derived an income by letting it to pasture. At the time he acquired it the law of South Carolina required all owners of cattle and stock to keep them fenced in, and gave the owners of lands upon which they might trespass the right to distrain and impound them. Thereafter the legislature passed an act exempting this land, with other tracts, from the provisions of the law, the effect of which was to require complainant either to fence his whole tract against cattle, or to submit to have it trespassed upon, without redress, by any cattle whose owners chose to let them run at large. *Held,* that this act is not within the police power of the state, and violates the federal constitution, inasmuch as it deprives complainant of his property without due process of law.

2. COURTS—JURISDICTION—FEDERAL QUESTION.
    Complainant filed his bill for an injunction against certain owners of trespassing cattle, alleging that defendants committed the injury complained of under the latter act. Defendants denied that they did anything under color of the act, but it was shown that they had applied to the legislature for its enactment, that before it was passed they had paid complainant for pasturage, and that since its passage they had refused to pay. *Held,* that a federal question was involved, and the United States circuit court has jurisdiction of the bill.

3. SAME—JURISDICTIONAL AMOUNT.
    As the bill alleges that the land in question is valuable for pasturage, and for no other purpose, and that by force of such act complainant is

entirely deprived of his rights and property therein, the amount in controversy, for the purpose of **jurisdiction, is** the value of the land.

**4.** SAME—INJUNCTION—MULTIPLICITY OF SUITS.

A court of equity has jurisdiction to entertain such suit for an injunction, for to leave complainant to his remedies at law would involve him in a multiplicity of suits.

In Equity. Bill for injunction by Henry A. M. Smith against Joseph Bivens and others. Injunction granted.

A. D. Cohen, for complainant.

C. C. Tracy, for defendants.

SIMONTON, District Judge. The complainant is the owner of about 8,000 acres of land, in one body, in Colleton county, in this state. The land is valuable for grazing purposes, and beyond this has little value. Complainant has been using it for such purposes, and has been in the enjoyment of an income therefrom, derived from a per capita royalty paid by owners of cattle placed in this pasture. When he purchased this property the law of South Carolina required all owners of cattle and stock to keep them fenced in, and, in case they strayed on the lands of others, gave to the owners of such lands the right of distraining and impounding them. No proprietor was required to fence his lands used for any purpose but pasture, and the provisions of the law protected him from trespass. In December, 1891, the general assembly of South Carolina passed an act to exempt certain territory in Colleton county from the operation of this law. Under the provisions of the act some 32,000 acres, in which territory was embraced this land of complainant, were exempted from the provisions of the general law. The complainant was thus compelled either to build a substantial fence around his whole tract, of a character to keep out cattle, hogs, and other stock, or his lands could be grazed upon by the cattle and stock of any person who chose to turn them out. The defendants are cattle and stock owners, neighbors of the lands of complainant, and anterior to the passage of the act in question had used the privilege of grazing on the lands of the complainant, and had paid the per capita royalty charged therefor. They were notified during the year 1891 of the intention of the complainant to increase the royalty per head, and one and all declined to pay it, or to contract on those terms. Nevertheless, since the passage of the act, their stock and cattle have been at large, and have constantly trespassed upon this land of the complainant. This, perhaps, could not be prevented in any other way than that provided in the general law; that is, by fencing in the stock and cattle, and not permitting them to run at large.

The bill is filed to protect the complainant in the complete possession and use of his own land. It charges that the defendants were largely instrumental in procuring the passage of the act of the legislature above referred to, and that they are protected under the color of that act; that he has no remedy at law to meet his case; and that an attempt to seek such a remedy would involve him in a multiplicity of suits. He charges that the said act vio-

v.56F.no.7—23

lates the provisions of the constitution of the United States, and is null and void. The prayer is for an injunction. The answer denies the principal allegations of the bill, admits the passage of the act of the general assembly referred to in the bill, and maintains that it is not in conflict with the constitution of the United States. Especially, it challenges the jurisdiction of the court, as well its jurisdiction as a court of the United States as its jurisdiction as a court of equity. These questions must be first disposed of.

It is contended that this court has not jurisdiction because the matter in controversy does not exceed in value the sum of $2,000, exclusive of interest and costs. The complainant avers that the testimony sustains the averment that the land is valuable as grazing or pasture land only. It further appears that the complainant has been using it for this purpose, and that he realized in one year at least $500 for its use. This was due simply to the fact that he could control the grazing on his own land. Until the passage of this act he could exercise his control. Since its passage he has lost it, and with it his income. Capitalized, this income is 4 per cent. on $12,500, 4½ per cent. on $12,000, 5 per cent. on $10,000, 6 per cent. on $8,333, and 7 per cent. on $7,100.

Let us look at it from another point of view. The land of complainant was purchased by him solely for grazing and pasture purposes. It has value for this purpose, and none other. The testimony shows that this is the general character of the land in this vicinity, and that the land of complainant is specially valuable for this purpose. The act of the legislature destroys the control by complainant of his property for this purpose, and to this extent impairs it value. The land contains 8,000 acres. The value of the land in that neighborhood, as shown by the testimony, is not less than 33 cents per acre, that is to say at least $2,640. This is the matter complained of, and measures the injury for which complainant seeks redress. The case comes within Railroad Co. v. Ward, 2 Black, 492, or as it is stated in Railway Co. v. Kuteman, 54 Fed. Rep. 552, in a suit for an injunction, the amount in dispute is the value of the object to be gained by the bill.

Another objection set up in the answer by way of demurrer is that the bill and answer, with the testimony, show that no federal question is involved, and that parties on both sides are citizens of the same state. The bill charges that the act of the general assembly, 22d December, 1891, is unconstitutional, null, and void, in that it deprives the complainant of his property without due process of law; that it denies to him the equal protection of the law, as given to the rest of the citizens of this state; that it impairs the contract entered into with complainant; that it lessens and affects and impairs the value of complainant's land, without due compensation; and that it subjects the property of complainant to the use and benefit of defendants and the public without compensation. The defendants, in argument, deny that the act of the general assembly is used by them as a shield for their protection, or that they invoke the same. They insist that the only difference between

them and complainant is this. They admit his right to charge them for the use of his land, and they find themselves unable to pay the increased charge which he has made. The bill alleges that the act of the general assembly protects the defendant, and that it is unconstitutional, null, and void. The answer denies that it is unconstitutional, and made this a distinct issue in the pleadings. Beside this, under the law, as it stood before the passage of the act, the owner of stock was compelled to keep them in so that they could not trespass on lands of others. For doing this they were exposed to certain action on the part of the landowner. The act in question repealed all this, and the landowner trespassed upon had no remedy. Indeed, the action of the stock was no longer a trespass. The purpose of the bill is to obtain relief from this. It is clear from the testimony that stock of the defendants—the most, if not all, of them—graze on the land of complainant. He can legally demand nothing from their owners for the use of this land, if the act be valid; and their willingness to pay something is a gratuity, and does not create a legal demand, or make that a tres-pass which the law does not. From this state of things the complainant seeks relief. He does so by alleging that the act is unconstitutional. Defendants deny this. Necessarily, they get, if they do not seek, the protection of the act. Besides this, the defendants paid the charge of complainant for the use of the land for one year. But during that year they were parties to an application to the legislature for an amendment of the law which would free them from this obligation. We cannot, of course, inquire into or impugn the motives of the legislature in passing the law. But in ascertaining the attitude of the parties to the act, and in inquiring whether they rely on it or not, we can ascertain the steps they took to secure its passage, and from these judge of their motive.

"The character of a case [whether it be federal or not] is determined by the questions involved. Osborn v. Bank, 9 Wheat. 738. If from the questions it appears that some title, right, privilege, or immuni-ty on which the recovery depends will be defeated by one construc tion of the constitution, or sustained by the opposite construction, the case will be one arising under the constitution and laws of the United States." Starin v. City of New York, 115 U. S. 257, 6 Sup. Ct. Rep. 28. Of the positions taken in the bill upon which it is claimed that this act is unconstitutional, we cannot consider that charging that it is the taking of private property for public use. The inhibition of the constitution of the United States on this sub-ject applies only to acts of the general government. Barron v. Baltimore, 7 Pet. 243. And although the supreme court of this state has held in Fort v. Goodwin, 15 S. E. Rep. 723, that a similar act violated the state constitution, this would not give this court jurisdiction.

The federal constitution, however, does inhibit the state from de-priving any person of life, liberty, or property without due process of law. 14th Amend. § 1. "Due process of law" has never received any exact definition. Freeland v. Williams, 131 U. S. 407, 9 Sup. Ct. Rep. 763. Mr. Chief Justice Fuller, in Caldwell v. Texas, 137 U. S. 697,

11 Sup. Ct. Rep. 224, says: "Law, in its regular course of administration through courts of justice, is due process, and, when secured by the law of the state, the constitutional requisition is satisfied." In the case at bar the complainant, owner of a tract of land, and as such owner entitled to its exclusive use and enjoyment, is by an act of the legislature, and without more, deprived of this exclusive use and enjoyment. By the stroke of a pen, it is gone. This seems a clear illustration of what is forbidden in the constitution.

The only remaining inquiry is, is this act of the general assembly of the state of South Carolina the exercise of police power? If so, it is above the constitution. The police power is among the reserved powers of the states. New York v. Miln, 11 Pet. 102. It cannot be accurately defined. It is described as the power to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the state, develop its resources, and add to its wealth and prosperity. Barbier v. Connolly, 113 U. S. 31, 5 Sup. Ct. Rep. 357. Where the purpose of the law is the adoption of measures appropriate or needful for the protection of public morals, the public health, and the public safety, there is no question that it is within the police power. Mugler v. Kansas, 123 U. S. 631, 8 Sup. Ct. Rep. 273. But when the enactment goes beyond that, while we are bound to indulge every possible presumption in favor of the validity of a statute, (Sinking Fund Cases, 99 U. S. 700,) it does not at all follow that every statute, even if it be enacted ostensibly for these ends, is to be accepted as a legitimate exertion of police power.

We are relieved from doubt as to this question by the supreme court of South Carolina. In Fort v. Goodwin, 36 S. C. 452, 15 S. E. Rep. 723, the court discusses the constitutionality of an act of assembly exempting a large body of swamp in Lexington county from the operation of the stock law. The court, considering the question, hold that the effect of the act is the taking of private property, in the sense of the constitution. The court says:

"It may possibly be inferred that it is for the benefit of those whose business is to raise stock. It manifestly increases the burdens of the freeholders within the inclosure, who make objection that their lands are to be turned into a public pasture, * * * and thus required to fence any portion of their lands which they may wish to cultivate. As we think, the legislature cannot accomplish such purpose."

It is a delicate thing to declare a state statute unconstitutional. But the supreme court of South Carolina, in the case above quoted, and in Utsey v. Hiott, 30 S. C. 367, 9 S. E. Rep. 338, have declared similar acts invalid, upon the principles above stated, and in a recent case, still in manuscript, Sanders v. Venning, (23d March, 1893,) 17 S. E. Rep. 134, confirm these cases.

This case presents a federal question, and is within the jurisdiction of this court. With regard to the general equity jurisdiction, there can be less question. By the operation of the act the complainant is exposed constantly to trespasses upon his land, and to the use and destruction of his property. Were he limited to relief

at law he would be involved constantly in a multiplicity of suits, and harassed by endless and unsatisfactory litigation. As long as the act remains of force this cannot be prevented. The owners of cattle are not required to fence them in, and in despite of the efforts of complainant, and we may say even against the wishes of the cattle owners, these trespasses will go on.

No damages will be awarded. Let the injunction issue in accordance with the prayer of the bill.