PACIFIC LIVE-STOCK CO. v. HANLEY et al.

(Circuit Court, D. Oregon. December 22, 1899.)

No. 2,577.

1. EQUITY PLEADING—MULTIFARIOUSNESS.

A bill by which complainant asserts his right to the flow of the waters of a river to his lands, and seeks to restrain their diversion, is not multifarious because a number of persons are joined as defendants, and alleged to have separately diverted water from the river.

2. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

In such a suit it need not appear, to give a federal court jurisdiction, that the amount involved as to each defendant exceeds the jurisdictional amount, the matter in controversy being the injury to complainant's property, to which, it is alleged, all of the defendants contribute, and for which they are chargeable jointly.[1]

3. EQUITY PLEADING—GENERAL DEMURRER TO BILL.

A general demurrer to a bill for want of equity will not lie where the facts alleged are sufficient to show that complainant is entitled to relief; if the allegations are not sufficiently definite and certain, the objection should be taken by special demurrer.

On Demurrer to Bill.

L. B. Cox, for complainant.
Mitchell & Tanner, for defendants.

GILBERT, Circuit Judge. The complainant, a corporation of California, seeks by its bill to enjoin numerous defendants, citizens of Oregon, from diverting the waters of Silvies creek, in Harney county, in the state of Oregon. The bill alleges that the complainant is engaged in the business of buying, selling, and raising cattle, sheep, and horses; that it is the owner of large tracts of land in the county of Harney, in the state of Oregon, situated in and about the region lying between the forks of Silvies river and Malheur Lake, and adjacent to those forks, which lands are described as nearly level, sloping gently towards the south, watered by the Silvies river, a sluggish stream, with low banks, and, through numerous sloughs, minor channels, and swales, connected with the main channels of the river and its forks; that the waters of said river, when not obstructed or diverted, in their natural flow spread over and irrigate and subirrigate the complainant's lands, and produce thereon abundant and valuable crops of wild grass. The bill then sets forth the steps whereby the complainant obtained title to its lands at various dates, beginning with the year 1874, and avers that a portion thereof was acquired as desert lands, a portion as swamp and overflowed lands, a portion as university, agricultural, college, and indemnity school lands, and the remainder under the public land laws of the United States. The bill alleges that in 1874 one of the complainant's predecessors in interest entered into the possession of the lands which lie between the forks of Silvies river and Malheur Lake, together with

[1] For jurisdiction of federal courts, as determined by amount in controversy, see note to Auer v. Lombard, 19 C. C. A. 75, and, supplementary thereto, note to Shoe Co. v. Roper, 36 C. C. A. 459.

some adjacent lands, and placed thereon a large number of cattle, and that the business of stockraising was by him and by his successors in interest consecutively continued; that in 1885 its grantors built a dam in the main channel of the West Fork of Silvies river, and diverted a large part of the waters of the main channel into said branch, and built another dam lower in the said branch, thereby diverting into it all the water naturally flowing in said branch, and the water which had been diverted thereto by the first dam, and since said date the complainant and its grantors and predecessors have kept and maintained said dams, and thereby diverted large quantities of the water from Silvies river; that in the year 1885 other dams were built by the complainant's said predecessors in interest in the main channel of the West Fork of said river, causing thereby the waters of the channel to overflow its banks, and spread over the complainant's lands; that during all the time the complainant and his predecessors in interest have been in possession of said lands they have, during each year, mowed and cured a large part of the native wild grass growing on said lands, and used the remainder of said grass for pasture, and have enjoyed each year the flow of water in said Silvies river, its forks, branches, subchannels, sloughs, and swales, and have distributed the water by means of said dams. The bill proceeds to allege that the value of said lands, with said water upon them, exceeds $200,000, and the value of their natural use to the complainant is $20,000 per annum, but that without the use of the water thereon the total value of the lands would be no greater than $10,000, and that the complainant would be unable to continue its said business; that the complainant is entitled to have the waters of Silvies river flow down its main channel, and through the forks, branches, minor channels, sloughs, and swales, over and upon said lands, as the same have been wont to flow, and would now flow, if not obstructed or diverted, and that all the flow of the water of said river is necessary for such purposes, and that the complainant is entitled to have a thousand inches of the waters of said river flow through a certain ditch constructed by one Homer B. Mace, to whose rights the complainant succeeded. The bill then alleges that, notwithstanding the complainant's rights, the defendants have wrongfully entered upon the channels of said river above the lands of the complainant, and have wrongfully constructed, and are now wrongfully maintaining, dams in said channels and ditches leading therefrom, all of which dams and ditches are specifically described in the bill; that thereby the waters in the main channel and in the forks of said river have been impounded and diverted entirely from the channels, and have been wastefully distributed over a large area of country, whereby the water has become lost, and the complainant has been deprived of the use thereof. The prayer for relief is that the defendants be enjoined from diverting any of the waters of Silvies river, or of the East or West Forks thereof. The defendants demur to the bill upon the grounds—First, that it is multifarious; second, that it does not appear that the amount involved as to each defendant is sufficient to confer jurisdiction; and, third, that the bill is without equity.

The rule against multifariousness forbids the complainant to unite in one bill several distinct demands against several defendants who have no common point of interest with each other. But if the cause of suit is entire in itself, and the relief sought does not consist in separate unconnected things, all the defendants connected therewith, and to be affected thereby, may be brought into one suit, and it is not necessary that the interest of each defendant shall extend to the whole subject-matter of litigation. The cause of suit presented in the present bill is single, so far as it affects the complainant. The complainant sues to restrain the diversion of the water of a certain stream. It brings into the suit as defendants all those against whom it seeks relief. The point of common interest between the complainant and the defendants is the water of Silvies river. The right of the defendants to divert it is the question involved. The complainant asserts its right to the flow of the water as it was before the acts of the defendants had their inception. The question of the rights of the defendants, and each of them, as to the complainant, are proper subjects of adjudication in one suit. In no other way can the extent of their respective interests be satisfactorily determined. The quantity of water diverted by one defendant from the stream may not be sufficient to interfere with substantial rights of the complainant. By the action of all of them, according to the allegations of the bill, the injury which is sought to be remedied is accomplished. I think there can be no question that the relief which is sought against the various defendants may be afforded in one suit. Mining Co. v. Dangberg (C. C.) 81 Fed. 73; Hillman v. Newington, 57 Cal. 56; Miller v. Ditch Co., 87 Cal. 430, 25 Pac. 550; Blaisdell v. Stephens, 14 Nev. 17; Saint v. Guerrerio, 17 Colo. 448, 30 Pac. 335; Henshaw v. Canal Co. (Ariz.) 54 Pac. 577; Larimer & Weld Reservoir Co. v. Water Supply & Storage Co. (Colo. App.) 42 Pac. 1020.

It follows from the foregoing view of the relation of the various parties defendant to the causes of suit that the objection which is urged against the jurisdiction, on the ground that it is not shown that the amount involved as to each defendant exceeds $2,000 exclusive of interest and costs, is not well taken. The liability of the defendants, upon the facts stated in the bill, is not the sum total of a number of individual items, each of which is definitely calculable. The injury is single, and the proportion which each defendant contributes to it is not in the nature of things ascertainable. It may not be demonstrated that any single defendant, because of his diversion of a certain or definite portion of the water, is responsible for that proportion of the damage which is complained of in the bill. The defendants cite and rely upon certain decisions of the supreme court in which it has been held that, in a suit to restrain various state officers from collecting taxes in different counties of the state, the amount in controversy as to each defendant must not be below the jurisdictional limit. Those decisions rest upon grounds which have no application to the present suit. There is no concerted action between state officers in collecting such taxes, and the fact that their rights are to be determined by the construc-

tion which may be given to a single law cannot serve to unify the various and distinct causes of suit that a single taxpayer may have against them. In the case at bar the matter in controversy is the injury to the complainant's property. The sum total of that injury is alleged to be $190,000. The bill charges that all of the defendants contribute to it. If such is the case, all of the defendants are chargeable as joint trespassers in producing the result, and the amount in controversy is the whole amount involved.

It is contended that the bill is subject to a general demurrer for want of equity, for the reason that it fails to allege specifically and with certainty the dates when the defendants first diverted the waters of Silvies river and appropriated the same, and that it fails to state facts sufficient to show that the complainant's rights are anterior in point of time to such appropriation. On consideration of all the allegations of the bill, I think it sufficiently appears therefrom that the diversion of the water by the various defendants is averred to be subsequent in point of time to the appropriation thereof by some of the complainant's grantors, and the use thereof by the complainant and others of its grantors for the purposes alleged in its bill. Enough is alleged to show such use of the water from the year 1874, and that in 1885 and 1890 various dams and ditches were constructed for further appropriation thereof. The bill asserts the right of the complainant to have all the water flow as it was accustomed to flow before the diversion thereof by the defendants, and charges that, in violation of such right, the defendants have wrongfully entered upon the channels of said river's forks above the complainant's lands, and have wrongfully constructed, and are now wrongfully maintaining, divers dams in said channels, with ditches leading therefrom, whereby the water has been diverted from the channels of the river, and the complainant has been deprived of the use thereof. Enough is alleged to show that the complainant is entitled to relief, as against the acts of the defendants, and a general demurrer for want of equity cannot be sustained. If the allegations of the bill are not sufficiently definite and certain, the defendants' remedy was by a special demurrer. Wescott v. Wicks, 72 Ill. 524; Pogue v. Clark, 25 Ill. 308; Chouteau v. Rice, 1 Minn. 106 (Gil. 83); Stewart v. Flint, 57 Vt. 216; Wilson v. Hill, 46 N. J. Eq. 367, 19 Atl. 1097; Tallman v. Green, 3 Sandf. 437. The demurrer will be overruled.