# CASES

## ARGUED AND DETERMINED

#### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### LOUISVILLE & N. R. CO. v. SMITH et al.

#### (Circuit Court of Appeals, Fifth Circuit. February 2, 1904.)

#### No. 1,268.

**1. RAILROADS—RIGHT OF WAY—EASEMENT BY PRESCRIPTION.**

Where a railroad company has the charter power to acquire a right of way for railroad purposes, and it enters upon lands with the consent or license of the owner, and builds its railroad, expending money in the prosecution of the work, and holds it continuously for a period of more than 40 years, running trains over it daily, and exercising the acts of ownership that are necessary to keep the roadbed in proper condition during all that time, it acquires a right of way by prescription.

**2. INJUNCTION—GROUNDS—PROTECTION OF EASEMENT.**

Equity has jurisdiction by injunction to prevent interference with easements or their destruction, and a bill by a railroad company against a number of defendants, alleging that as owners of lands through which its road runs they are interfering with its right of way, denying its right to the same, threatening suits, and preventing it from keeping its roadbed in repair, states a cause of action for equitable relief.

**3. JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY—HOW DETERMINED.**

In a suit by a railroad company in a federal court against a number of landowners to enjoin threatened interference with its use of its right of way through their lands the value of the right sought to be protected, and not the value of the land constituting the right of way across the lands of defendants, constitutes the value in controversy for jurisdictional purposes.

**4. PARTIES—JOINDER OF DEFENDANTS—SUIT TO ENJOIN INTERFERENCE WITH EASEMENT.**

Different landowners may be joined as defendants in a single suit by a railroad company to enjoin interference with its use of its right of way and with the maintenance of its track, where the right asserted is the same against each defendant.

Appeal from the Circuit Court of the United States for the Northern District of Alabama.

---

¶ 1. See Railroads, vol. 41, Cent. Dig. § 142.

¶ 3. Jurisdiction of circuit courts as determined by the amount in controversy, see notes to 19 C. C. A. 75, 36 C. C. A. 459.

The appellant, a Kentucky corporation (complainant below), brought this suit against Mrs. M. E. Smith and 14 others, appellees (defendants below), all citizens of Alabama. The averments and purpose of the bill are sufficiently shown in the opinion. The defendants demurred to the bill, making the objections which are stated and discussed in the opinion. The circuit court sustained the demurrers and dismissed the bill, and its decision and decree are assigned as error.

John W. Judd (John B. Keeble and Chas. B. Stark, on the brief), for appellant.

W. R. Walker (Thomas C. McClellan, on the brief), for appellees.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. 1. It is shown by the bill that on December 19, 1853, the Legislature of Alabama passed "An act to incorporate the Tennessee and Alabama Central Railroad Company." Acts 1853–54, p. 298. The act provided that the railroad to be built should extend from Montevallo, in Shelby county, Ala., through the town of Decatur, crossing the Tennessee river; thence through Limestone county to some point on the boundary line between Alabama and Tennessee, and there to connect with other railroads. The charter authorized the company to contract for and receive conveyances for the right of way not to exceed 150 feet wide, and for the material necessary to build the road. It also made provision for the condemnation of the right of way where it could not be contracted for. Work began on the building of the road in 1856 or 1857, and it was finished through Limestone county to the Tennessee line in the year 1859. It is alleged on information and belief that the railroad company either acquired the right of way upon and through the defendants' lands under provision of the charter, or that it acquired such right by "let" and license of the owners through whose lands the railroad was constructed. After the completion of the road through Limestone county, and through the lands now owned by the defendants, its operation was begun in the year 1859, and it has since been continuously operated by the complainant, and those under whom it claims, up to the time of the filing of the bill. It is alleged that since July 1, 1872, and up to the present time, the complainant has claimed, owned, held, operated, and maintained the railroad continuously without hindrance from any one, and that it is now holding, maintaining, operating, and claiming to own and operate it. These averments are emphasized in an amendment to the bill, in which it is averred that the right of way in question is continuous, extending through Limestone county, a distance of 26 miles, and was acquired and taken possession of more than 40 years ago, and that the complainant and those under whom it holds "has claimed, used, occupied, and been in possession of said right of way all this time, continuously running its trains over the same, and continuously, wherever necessary, building switches and turnouts, ditching, grading, and doing all manner of work necessary to keep its roadbed and right of way in suitable condition and repair for the safe operation of its trains, both freight and passenger, and this use of said right of way has never been questioned or denied until the interference by the defendants." We think these

averments are sufficient to show that the complainant has acquired an easement or right of way across the lands in question. In Alabama an action to recover lands, tenements, or hereditaments is barred by the statute of limitation of 10 years. Code Ala. 1896, § 2795. The ancient doctrine of prescription required a use from time immemorial. But now, in most jurisdictions (and certainly in Alabama) the prescriptive period is the same as the local statute of limitations for quieting titles to land. Nininger v. Norwood, 72 Ala. 277, 47 Am. Rep. 412. Where a railroad company has the charter power to acquire a right of way for railroad purposes, and it enters upon the lands of the owner, with his consent or license, and builds its railroad, expending money in the prosecution of the work, and holds it continually for a period of more than 40 years, running trains over it daily, and exercising the acts of ownership that are necessary to keep the roadbed in proper condition during all that time, it acquires by prescription a right of way. Texas & Pacific Railroad v. Scott, 77 Fed. 726, 23 C. C. A. 424, 37 L. R. A. 94; National Water Works v. Kansas City (C. C.) 65 Fed. 691; Cogsbill v. Mobile & Girard Railroad, 92 Ala. 252, 9 South 512; Midland Ry. v. Smith, 113 Ind. 233, 15 N. E. 256.

2. It is unquestionably settled that equity has jurisdiction by injunction to prevent the interference with easements or their disturbance or destruction, actual or threatened. This doctrine has been applied in a great variety of cases, such as preventing the diversion of water, preventing the obstruction of a private right of way, preventing the pollution of a stream, preventing the obstruction of a public right of way, etc., and (in Cairo V. & C. Railroad v. Brevoort [C. C.] 62 Fed. 129, 135, 25 L. R. A. 527) in the prevention of obstructions or interference with a railroad's right of way. Every disturbance of an easement, actual or threatened, will be restrained whenever, from the essential nature of the injury or from its continuous character, the legal remedy is inadequate. Nininger v. Norwood, 72 Ala. 277, 47 Am. Rep. 412; Hacke's Appeal, 101 Pa. 245; Gardner v. Trustees, 2 Johns. Ch. (N. Y.) 162, 7 Am. Dec. 526; Russell v. Napier, 80 Ga. 77, 4 S. E. 857; Nashville, etc., Railroad v. M'Connell (C. C.) 82 Fed. 65; 3 Pom. Eq. Jur. (2d Ed.) § 1351, and notes. It is shown by the bill that the defendants are denying the right of the complainant to the right of way, and are insisting upon their right to cultivate the lands up to the ends of the cross-ties of the complainant's roadbed and track, and are denying the complainant the right to go upon the lands included in its right of way for the purpose of reconstructing its roadbed and banks and cutting or repairing ditches therein as the same are needed in the proper maintenance and operation of the road. The complainant has been warned by the defendants not to do the work necessary on the right of way to keep the same in proper condition, and other wrongs and threatened wrongs are alleged in the bill; and it is then stated:

"The action of the defendants is such that the complainant is unable to keep and maintain its track and roadbed in proper and safe condition so as to suitably and safely operate its trains. That said defendants are continually threatening this complainant and its employés with suits, both civil and criminal, for entering upon its right of way contiguous to their land in the performance of the work necessary to be done in the maintenance and operation of the road."

These averments, taken in connection with the others in the bill, are amply sufficient to give a court of equity jurisdiction to protect the alleged rights of the complainant. Jones on Easements, § 879 et seq.

3. The defendants contend that it does not appear from the bill that the suit involves property exceeding $2,000 in value, and that, therefore, the circuit court was without jurisdiction. The bill shows that the complainant is the owner of a railroad known as the Nashville & Decatur Railroad, 119 miles long, extending from Nashville, Tenn., to a junction with the Southern Railway near Decatur, Ala., including the roadbed, tracks, switches, side tracks, rails, ties, bridges, etc. The exhibits to the bill showing rental values for long terms of years, and amount of taxes paid, show that the entire railroad is of great value, worth several millions of dollars. The railroad runs through Limestone county, Ala., a distance of 26 miles, and for a distance of about 20,000 feet through lands in that county which are owned in separate tracts by the defendants. It is averred that for the last 45 years the complainant and those under whom it claims has used the track, and is now using it, by running trains of cars over it. The complainant asserts the right to continue so to use the road, and claims that its right of way is 150 feet wide—75 feet on each side from the center of its track. The purpose of the bill is to protect the complainant in the use of this right of way against the unlawful interference of the defendants. The property claimed by the complainant in the bill is an easement or right of way. The easement extends from one end of its road to the other. After stating these facts, the complainant alleges that "the value of the property, as mentioned in this bill as claimed by it, and which is in controversy in this suit, exceeds the sum and value of $2,000, exclusive of interest and costs." The construction placed on the bill by appellees' counsel can be best shown by a sentence from their argument: "Plaintiff cannot join in a single suit in a federal court claims against several parties, and sustain the jurisdiction of the court by reason of the fact that the total amount involved exceeds the amount necessary to give the court jurisdiction." The railroad, as we have said, passes through the different tracts of defendants' lands for about 20,000 feet, varying in length through the separate tracts from 200 feet to 4,150 feet. The learned counsel for the appellees evidently construes the bill as involving, as to amount, not more than the value of a strip of land 150 feet wide across the respective tracts of the defendants. And, placing that construction on the bill, it is argued that the value of the several strips across the several tracts cannot all be added together to make the jurisdictional amount. If that construction of the bill were correct, unless the value of the strip on each defendant's land exceeded $2,000, the court would be without jurisdiction, for it has been often held that distinct claims against several defendants cannot be united to make up the amount necessary to give the court jurisdiction. Walter v. Northeastern Railroad, 147 U. S. 370, 13 Sup. Ct. 348, 37 L. Ed. 206; Clay v. Field, 138 U. S. 464, 11 Sup. Ct. 419, 34 L. Ed. 1044; Russell v. Stansell, 105 U. S. 303, 26 L. Ed. 989; Gibson v. Shufeldt, 122 U. S. 27, 7 Sup. Ct. 1066, 30 L. Ed. 1083; Fishback v. Western Union Telegraph Co., 161 U. S. 96, 16 Sup. Ct. 506, 40 L. Ed. 630; Waite v. Santa Cruz, 184 U. S. 302, 22 Sup. Ct. 327, 46 L. Ed. 552;

Seaver **v.** Bigelow, 72 U. S. 208, 18 L. Ed. 595.   But the bill in this case does not assert distinct claims against several persons, and seek to aggregate them to make up the jurisdictional amount; nor is it a suit to condemn or appropriate a right of way across defendants' lands. It is specifically alleged that the plaintiff many years ago "acquired and now holds" the right of way as a perpetual easement.   The property involved, and which the complainant seeks to protect, is the easement or right of way acquired many years ago—the right to run its trains along its railway.   The value of the thing involved in this suit cannot be ascertained by aggregating the value of the several strips of land covered by the right of way across the tracts owned by the defendants. That becomes clear when we consider that one defendant—the one whose land on one side joins the right of way for only 200 feet—can damage the complainant as much by obstructing its right of way as all of the defendants owning the other 19,800 feet.   A permanent impediment on 10 feet of the road would be as injurious and disastrous to complainant's rights as an impediment on 10 miles of it.   When the pleader says that the "property claimed by it" and "which is involved in this suit" is worth more than $2,000, he means, not that several and distinct claims against the several defendants are to be valued and added together, but it means the one indivisible right to run its trains on its right of way.   That is the right it seeks to protect by its suit praying for an injunction.   In a suit to abate a railroad bridge as a nuisance the Supreme Court held that the value of the right to maintain the bridge, and not the amount of complainant's damage, determines the jurisdiction of the court.   The question was disposed of with much brevity:

"But the want of a sufficient amount of damage having been sustained to give the federal courts jurisdiction will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern."   Mississippi, etc., Railroad v. Ward, 67 U. S. 485, 492, 17 L. Ed. 311.

In an injunction suit by a railroad company to maintain its scheduled rate against attack by numerous actions in state courts it was held by this court, citing the case last quoted, that the amount in dispute was the value of the object to be gained by the bill.   T. & P. Railway v. Kuteman, 54 Fed. 547, 4 C. C. A. 503.   The same principle has been announced in other cases.   Whitman v. Hubbell (C. C.) 30 Fed. 81; Smith v. Bivens (C. C.) 56 Fed. 352; Humes v. City of Fort Smith (C. C.) 93 Fed. 857; Nashville, etc., Railroad v. M'Connell (C. C.) 82 Fed. 65.   In a case where the plaintiff sought an injunction against several defendants diverting water from a river, it was held that it need not appear that the amount involved as to each defendant exceeded $2,000.   The matter involved was the injury to the plaintiff's property. If the injury sought to be enjoined was of the jurisdictional amount, that was sufficient.   Pacific Live Stock Co. v. Hanley et al. (C. C.) 98 Fed. 327.   A recent decision of the Supreme Court sustains this view. The plaintiff was a dealer in imported liquors.   The defendants— several constables—threatened to seize and destroy all liquor imported by him into the state.   Objection was made to the plaintiff's bill on the ground that the value in controversy did not exceed the sum of $2,000. The record showed that he intended to import liquors of a value ex-

ceeding that sum, and that the right to deal in such liquors was of a greater value than $2,000. This appears in evidence by an agreed statement. The court held that:

"Such statements sufficiently concede that the pecuniary value of plaintiff's rights in controversy exceed the value of two thousand dollars. Nor can it be reasonably claimed that the plaintiff must postpone his application to the Circuit Court, as a court of equity, until his property to an amount exceeding in value two thousand dollars has been actually seized and confiscated, and when the preventive remedy by injunction would be of no avail." Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648.

It must be remembered, too, that this question is before us on demurrer, and that the value is not liquidated or fixed by law. The alleged value, therefore, must govern. Texas & Pacific Ry. v. Kuteman, 54 Fed. 547, 4 C. C. A. 503. Taking the averments of the bill as true, as we must do on demurrer, we think it is shown that the value of the right involved in the suit is sufficient to confer jurisdiction.

4. The appellees contend that there is a misjoinder of parties defendant. There has been much controversy in recent years as to the circumstances under which a plaintiff may join many defendants in a suit in equity to prevent a multiplicity of suits. Some courts have held that Mr. Pomeroy (1 Pom. Eq. Jur. §§ 245–273) has unduly enlarged the rule. Tribette v. Railroad Company, 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642; Turner v. Mobile, 135 Ala. 73, 33 South. 132. But there are other authorities that fully indorse the views of the text-writer. Harlan, Circuit Justice, in Osborne v. Wisconsin Railway Co. (C. C.) 43 Fed. 825; De Forest v. Thompson (C. C.) 40 Fed. 375; Ritchie v. Sayers (C. C.) 100 Fed. 520; Keese v. City of Denver, 10 Colo. 113, 15 Pac. 825; Carlton v. Newman, 77 Me. 408, 1 Atl. 194. If the position taken by Pomeroy and the authorities last cited be correct, there is no misjoinder of parties defendant, because equity would have jurisdiction of the case on the sole ground of preventing a multiplicity of suits. But in this case we are not required to take either side in that controversy. Here the jurisdiction in equity, as we have seen, is not dependent alone on preventing a multiplicity of suits. There are other and distinct grounds for equitable interference. The complainant seeks by injunction to prevent an obstruction to and interference with its right of way under circumstances, as we have shown, that confer equity jurisdiction from the inherent nature of the case, aside from the fact that the interposition of the equity court may prevent a multiplicity of suits. As to the alleged misjoinder of the defendants, the question here is, when may defendants be joined in a suit by a complainant, the bill stating other grounds for equitable interference, and not depending for its equity on the doctrine of preventing a multiplicity of suits? The rule, we think, is plain that when the matter in litigation is entire in itself, and does not consist of separate things, having no connection with one another, it is not necessary that each defendant should have an interest in the suit coextensive with the claim set up by the bill. He may have an interest in a part of the matter in litigation instead of the whole. There can be no reason why one complainant, who has the same right against a number of persons—that right being such that it confers equity jurisdic-

tion—may not have that right determined as to all the parties interested by one suit. The plaintiff's claim is an entirety. It is a suit to protect a single indivisible right of way. The right claimed is exactly the same against each one of the defendants. All of the defendants are interfering in the same manner with the same right of way. As the case is one on the averments of the bill within the jurisdiction of a court of equity, there can be no reason for requiring the complainant to file 15 bills, one against each defendant. It is no objection that the several defendants each have a right to make a separate defense against the claim of the complainant, provided the complainant's assertion of right is the same against each, and there is only one general question to be settled, which pervades the whole case. It is enough if the purpose of the bill is to establish a single right between the complainant and the several defendants. Hyman v. Wheeler (C. C.) 33 Fed. 629; Pacific Live Stock Co. v. Hanley et al. (C. C.) 98 Fed. 327; Smith v. Bivens (C. C.) 56 Fed. 352; Nashville, etc., Railroad v. M'Connell (C. C.) 82 Fed. 65; Union Mill & Mining Co. v. Dangberg (C. C.) 81 Fed. 73; Pillsbury-Washburn Mills v. Eagle, 86 Fed. 608, 30 C. C. A. 386, 41 L. R. A. 162; Prentice v. Duluth Forwarding Co., 58 Fed. 437, 7 C. C. A. 293; Sang Lung v. Jackson (C. C.) 85 Fed. 502; American Central Ins. v. Landau, 56 N. J. Eq. 513, 39 Atl. 400; Cadigan v. Brown, 120 Mass. 493; Kerr on Injunctions (Ed. 1880) 522.

We do not deem it necessary at this time to decide other questions. The complainant contends that the width of the right of way should be fixed at 150 feet, the charter of the company having authorized the obtaining of a right of way of that width. The defendants assert that a right of way acquired by prescription does not exceed in width the land occupied and used as a right of way. Clearly, this question, though elaborately argued here, is not necessarily involved in a decision of the demurrers, which are addressed to the whole bill.

The decree of the circuit court is reversed, and the cause remanded, with instructions to overrule the demurrers.