LACKAWANNA IRON & STEEL CO. et al. v. DAVIS–COLBY ORE ROASTER CO.

(Circuit Court of Appeals, Third Circuit. July 5, 1904.)

No. 62.

1. PATENTS—CONSTRUCTION OF CLAIMS—ORE ROASTING FURNACES.
   The Greer patent, No. 508,542, claims 3 and 8, for an ore roasting furnace, consisting of three vertical chambers, a combustion chamber, a stack, and an ore chamber between the other two, and communicating with each "at different points in its height," "substantially as described," "the combustion and ore roasting chambers being of substantially the same height," require all three chambers to be substantially coextensive, as shown in the drawings.

2. SAME—INFRINGEMENT. .
   The Greer patents, Nos. 495,883 and 508,542, for an ore roasting furnace, made up of three vertical chambers, each coextensive with the other two, the center one being a roasting chamber to hold the ore, and having openings at several points into each of the others, a combustion chamber on one side, fed from below by fuel gas intermixed with air, and a stack chamber on the other side, the draught created by which draws the flames from the combustion through the roasting chamber, were not anticipated, and are valid. Claims 3 and 8 of patent No. 508,542, covering the combination of the three chambers, and claims 3 and 4 of No. 495.883 and 4 and 5 of No. 508,542, covering a gas chamber in the base of the combustion chamber, having in its top exit openings for gas and air ports adjacent, construed, and held infringed.

Appeal from the Circuit Court of the United States for the Middle District of Pennsylvania.

For opinion below, see 128 Fed. 453.

Percy B. Hills, for appellants.

Henry N. Paul, Jr., and Joseph C. Fraley, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the Circuit Court for the Middle District of Pennsylvania, sustaining certain claims in two patents, granted to Robson C. Greer, for ore roasting and calcining furnaces, and assigned to the appellee, and decreeing an injunction and an accounting against the appellants, for an infringement thereof by an ore roaster first erected and operated at Scranton, Pa., and afterwards removed to Lebanon, Pa., where it not stands.

The Davis-Colby Ore Roaster Company, the appellee, is engaged in the business of erecting ore roasters, which are large furnaces in which iron ore (which is to be subsequently smelted or reduced in a blast furnace) is given a preparatory moderate heating in a draught of oxygen, for the purpose of expelling sulphur contained in the ore. Appellee's principal place of business is in Philadelphia, and the appellant, the Lackawanna Iron & Steel Company, is a large manufacturer of steel, having its main works, which were formerly at Scranton, Pa., in Buffalo, N. Y. Henrl Wehrum, manager of the appellant company, is joined as a codefendant in the court below.

The bill of complaint charges the defendant with having built at Scranton, Pa., an ore roaster which infringes upon three of complainant's patents, covering what is known as the "Davis-Colby Ore Roaster." These three patents comprise the two Green patents, above mentioned, and a patent granted to Owen W. Davis, also assigned to the appellee. Upon final hearing, the court below dismissed the bill as to the Davis patent, but sustained the two Greer patents, and found that they had both been infringed. The usual injunction and accounting was accordingly decreed upon these two patents, and from this decree the defendant has appealed.

The patents, therefore, brought before us upon this appeal are: No. 495,883, dated April 18, 1893, granted to Robson C. Greer, and as to which infringement is held as to claims 3 and 4 thereof; No. 508,542, dated November 14, 1893, to Robson C. Greer, infringement of which is held as to claims 3, 4, 5 and 8 thereof.

Infringement of the third and eighth claim of the Greer patent, No. 508,542, is admitted by the appellant, who claims, however, that the said claims are invalid by reason of anticipation. These claims are dominant and controlling in the structure of the Davis-Colby Ore Roaster, covering as they do the three coextensive vertical chambers, to wit, the combustion chamber, the air chamber and the draught equalizing chamber. The other claims involved are the third and fourth claims of Greer patent No. 495,883, and the fourth and fifth claims of Greer patent No. 508,542. These claims cover the gas and air inlets for the combustion chamber.

The discussion of the prior art, by appellant's counsel, in support of the defense of anticipation, is confined to the patent granted in 1870 to Knox and Osborn, No. 104,323, and to the patent to Valentine, No. 459,799, granted in 1891, and to the patent to Kleeman, No. 399,995,

granted in 1889. This latter reference, counsel for appellant speaks of as the one "most nearly in point," and practically confines his agument to a discussion of its features with relation to those of the Greer patents in suit.

The very full and exhaustive discussion by the learned judge of the court below of the claims of the two Greer patents, and of the prior art, especially with reference to the alleged anticipation of the Kleeman patent, would render a separate opinion by this court a mere paraphrase of what has been sufficiently said by the court below. We therefore content ourselves with adopting the opinion of the learned judge of the circuit court (reported in 128 Fed. 453), and we quote the same, omitting only those parts thereof referring to the Owen W. Davis patent, as to which there was a decree of no infringement, and to the Valentine and Sibley patents, which are so dissimilar, both in their object and in the structure claimed in them, as to require no further mention. In fact, none of them, except the Kleeman patent, seems to have been thought worthy of serious discussion by appellant's counsel. The opinion, with the exceptions noted, is as follows:

"The structure which is the subject of this litigation is what is known as an ore roaster, designed for expelling the sulphur from iron ore preliminary to smelting. Some ores have no sulphur but others are seriously impregnated with it, and this is particularly true of that obtained from the famous Cornwall banks near Lebanon, Pa., from which it has been the problem of a hundred years to successfully eliminate it. The complainants are the owners of three patents which are concerned with this subject, two issued to R. C. Greer —in April and November, 1893—and one to O. W. Davis, Jr., in May, 1894. Under these patents they undertook to erect at Lebanon in 1895 for the defendant company, who were operating the Colebrook furnaces there, an ore roaster with a capacity of one hundred tons daily, guarantied to roast down the sulphur to six-tenths of one per cent. This roaster did not work successfully at first, but was made to do so in the end, although there is some question whether this was not the result of favoring it with large sized ore. In order to overcome, however, existing difficulties permission was obtained to rebuild certain parts of it and plans for this purpose were submitted; and whatever lack of success there was or whatever was the cause of it the defendant company appear to have been sufficiently satisfied to ask for a proposition looking to the erection of a plant of five roasters at Scranton, Pa., where their principal works then were, in response to which the complainants made suggestion as to further changes which seemed desirable. But when it was found that a royalty of $1,200 for each roaster would be required Mr. Wehrum, the general manager of the defendants, refused to pay it and broke off the negotiations declaring he had never seen a patent which he could not get around. Immediately following this a roaster was put up by the defendants themselves under the direction of Mr. Wehrum, at Scranton, closely following in general design the plans and suggestions submitted by the complainants, certain changes however in matters of detail being introduced on which Mr. Wehrum at a later date applied for and obtained two several patents. This roaster was subsequently taken down and removed to Lebanon where it is now in use. The facts with regard to the original relations of the parties while given at this length, are not very material except as they go to show that infringement, if found to exist, is deliberate, and that Mr. Wehrum is properly joined as a defendant on account of his individual participation in it.

"The roasting furnace which is the subject of the two Greer patents is made up of three vertical chambers, each coextensive with the other two, the center one being designed to hold the ore to be roasted and having openings at several points into each of the others, a combustion chamber on the one side being fed from below by fuel gas intermixed with air to insure combustion and the heat and flame being drawn therefrom through the ore by means of the open-

ings provided for the purpose and the draft obtained from the stack chamber, the sulphur being expelled from the ore and carried off in the process. In the first Greer the form of furnace shown—although none is specified—is circular and the chambers annular; but in the second Greer, as in the defendants' structure, the chambers are rectangular. The latter construction is shown in the following diagrams taken from the second patent, one being an elevation in section and the other a ground plan.

"It will be noted that the several chambers referred to are made high and narrow, and set side by side, the object being to present to the flame from the combustion chamber a thin body of ore, through which it can effectively penetrate, gradually calcining and desulphurizing it as it descends. The Greer invention is in some respects expressed in its broadest terms in the third and eighth claims of the second patent, as follows:

" '3. An ore roasting or calcining furnace, having a rectangular stack, a rectangular combustion chamber, and a rectangular ore roasting chamber, said roasting chamber being located between said combustion chamber and stack and communicating on one side at different points in its height with said stack and on its opposite side at different points in its height with the combustion chamber, said combustion and ore roasting chambers being of substantially the same height, substantially as set forth.'

" '(8) In an ore roasting and calcining furnace, the combination of the rectangular stack and the rectangular combustion chamber, located at opposite sides of the furnace, with the rectangular roasting chamber between said stack and combustion chamber, said combustion and roasting chambers being of

substantially the same height and said roasting chamber having communication on one side at different points in its height with said combustion chamber and on its opposite side at different points in its height with said stack, substantially as described.'

"Infringement of these claims is conceded but their validity is denied the defense being that they have been anticipated by other existing devices. The prior art is unusually free from anything that can be called an anticipation. The very primitive arrangement known as the Gjers kiln, which is nothing more than a great open bottom pot with alternate layers of ore and fuel, was still in use at the time the Greer roaster was patented and there is very little to fill in the intervening gap. The Knox and Osborn (1870) which is cited as a reference is a reducing furnace for the treatment of cinnabar and other volatile ores. It has, like the Greer, an ore chamber designed to hold a vertical body of ore, which is "roasted"—as it is said—as it passes downwards by the process of fuel combustion drawn into and through it from a fire-place adjoining by force of a draft chamber on the opposite side, the metallic vapors expelled from the ore being caught and condensed in appliances beyond. Passing by the fact that this is found in the reducing and not in the roasting art (notwithstanding the term applied to the process by the inventor) and that it relates to a volatile metal such as mercury, which is reduced from its fumes, broadly speaking the same elements which are found in the plaintiffs' structure may be said to be employed. But it is conceded that it does not anticipate the particular claims under discussion which require the combustion and the stack chamber to be of equal height with the ore chamber and rectangular in shape; and neither can it the other claims relied upon, to be presently mentioned, in view of the specific combinations there found. The suggestion of counsel that the operation on the ore is the same—which may well be doubted—loses sight of the fact that we are dealing with a structure and not a process, a point that is made per contra to sustain the Kleeman patent as an anticipation, of which more later.

\* \* \* \* \* \* \* \* \* \*

"This brings us to the Kleeman which is confidently relied on by the defendants, and is the only device that approaches structurally to anything like the one in suit. It is designed for the reducing or smelting of zinc ore and was patented in England in 1885, in Germany in 1887 (being allowed to lapse there, however, in 1891 for nonpayment of dues) and in the United States in 1889. Like the Knox and Osborn it is found in the reducing and not the roasting art, processes which are said to be metallurgically antithetical. It is not necessary, however, to go into the distinction between them, nor to determine how far on the strength of it the perception of the availability of the Kleeman structure for roasting purposes could be regarded as a transfer and adaptation to a nonanalogous art involving the exercise of invention. Instructive examples, where this has been held to be the case are to be found in Potts v. Creager, 155 U. S. 606 [15 Sup. Ct. 194, 39 L. Ed. 275]; Carnegie Steel Company v. Cambria Iron Company, 185 U. S. 403 [22 Sup. Ct. 698, 46 L. Ed. 968], and Tannage Patent Company v. Zahn, 70 Fed. 1003 [17 C. C. A. 552]; but I shall not stop to discuss them. Adhering strictly to the position that equivalency of structure is to control, the lacking feature of the Kleeman is a stack chamber. It has an ore or reducing chamber and a combustion chamber adjoining, and both are rectangular and vertically coextensive, with openings between to permit the ore in the one to be acted upon by the combustion proceeding from the other. So far there is a similarity which is not disturbed by the fact, that the two chambers are set end to end instead of side by side as in the Greer, the result of which is that the ore body is presented to the flame in its thickest direction instead of in a thin layer, this being a feature which cannot be relied upon under the terms of the patent, however important to the roasting process. But distinctly and positively the third member of the combination—an adjoining stack chamber—is wanting. In its place is an extension of the reducing chamber through which in flues or retorts the zinc fumes are conducted to a tubular recipient beyond, and then by tortuous passages to where they are condensed and reclaimed. Neither structurally nor as a matter of process is there any resemblance in this to the stack chamber found in the Greer. Whether the latter be regarded as a draft producing or

simply as a draft equalizing chamber auxiliary and leading on to the actual chimney or stack at a greater or less distance beyond, the material thing is that the roasting is complete when it is reached; while in the Kleeman the reducing process is continued on through the extension chamber, with its flues and retorts, into still other and ulterior parts. Differing in both function and structure as they do, the two chambers are in no sense equivalent; and there is nothing therefore in this reference on which to predicate an anticipation of what we have here. This disposes of everything that is cited against the claims under discussion and their novelty and validity being thus established and infringement conceded the bill to that extent at least must be sustained.

"But there are other important elements which it is claimed that the defendants have appropriated. Underneath the combustion chamber, for the purpose of supplying fuel, is a gas chamber with exits from it and air ports adjoining, to insure combustion; and opening into the combustion chamber at various points above are other inlets for a similar purpose. The object of this arrangement is to secure a suitable supply and admixture of gas and air and to secure it at the proper place. Bearing as this does on the efficiency of the furnace the devices employed must be regarded as patentable elements in the combination in which they are found. They are embodied in the third and fourth claims of the first Greer patent and the fourth and fifth claims of the second as follows:

### "Patent 495,883.

" '(3) In an ore roasting or calcining furnace, the combination with the stack and an ore roasting chamber, of a combustion chamber having communication with said roasting chamber, said combustion chamber having in its base a gas chamber D formed in its top with exit openings d, and also having air ports e e' opening into it adjacent to the gas exits d.

" '(4) In an ore roasting or calcining furnace the combination with the stack and an ore roasting chamber, of a combustion chamber having communication with said roasting chamber, said combustion chamber having in its base a gas chamber D formed in its top with exit openings d and also having air ports e and e' opening into it adjacent to the gas exits d, and holes c' opening into it at various points, and means for closing said holes, c'.'

### "Patent 508,542.

" '(4) In an ore roasting or calcining furnace, the combination with the rectangular stack and rectangular ore roasting chamber, of a rectangular combustion chamber having communication with said roasting chamber, said combustion chamber having in its base a gas chamber D with gas exists in the top of same and also having air ports adjacent to said gas exits, substantially as set forth.'

" '(5) In an ore roasting or calcining furnace, the combination of the rectangular stack, the rectangular ore roasting chamber communicating therewith, and the rectangular combustion chamber communicating with said ore roasting chamber, said ore roasting chamber being located between said combustion chamber and stack, and said combustion chamber having in its base a gas chamber D with gas exits in the top of same and also air inlet opening into it adjacent to said gas exits and air inlets opening into it at various points, substantially as set forth.'

"The same references as before are brought forward to invalidate these claims, but with no better success. It is true that in the Kleeman furnace, air inlets are shown on either side of the gas flue leading up into the com· bustion chamber from the gas chamber below; and there are openings in the outer wall of the combustion chamber similarly located to those of the Greer. So far as these particular features of the combination are concerned this might affect the novelty of the fourth and fifth claims of the second patent which are in general terms; but in the third and fourth claims of the first, which are narrower, one of the air inlets into the combustion chamber being specifically located between the gas exit and the ore chamber insuring the presence of a suitable supply of oxygen at this point. But it is not material to insist on any such saving distinction. It is to be remembered that in each of these claims we are dealing with a combination from which it does not in the least detract,

that certain of its features are not new; we are not concerned therefore, whether the air inlets in juxtaposition to the gas flue in the Kleeman furnace are duplicated in the claims of the second Greer or not. Novelty is to be predicated upon the combination found in each as a whole, and this includes the three co-ordinate, combustion, ore, and stack chambers, as to which in correlation, the prior art, as we have seen, has nothing to suggest.

"As to the infringement of these claims it seems to me there can be no serious question. So far, in either, as there is a reference by letter to the accompanying diagrams they are, of course, confined to the specific combination thus shown; but even on that basis the defendants' structure offends. A gas chamber at the base of the combustion chamber is employed, opening up from which into the combustion chamber is a set of exits and adjacent to them, that is to say between them and the ore chamber, is a corresponding set of air inlets. Leading in also through the outer wall of the combustion chamber, on the opposite of the gas exits are passages which have the same relative position as the second air inlet specified in the claims of the first Greer; while similar inlets or passages open into it at various points in tiers up to the top of the furnace. It is said that these inlets are merely dust holes for cleaning out the furnace, and that the gas from the combustion chamber forces its way out through them to such an extent as to require that they shall be kept permanently closed. But in one of the Wehrum patents—according to which the defendants' structure is supposed to be built—they are described as affording communication with the outer air, and in the other are said to furnish means for inspecting the ores in process of roasting, and while their use for cleaning purposes is also declared, this additional function does not do away with the others mentioned, which are the same as specified in the patents in suit. It is true that these openings in the defendants' roaster are closed with doors; but this is specified in the fourth claim of the first Greer as to the so-called 'peep holes'; and is shown as to the second air inlet in the other. But the variance, if any, is not material. The openings are none the less ports or inlets within the terms of the patents because means are provided for opening and closing them. Nor in judging of their equivalency is the particular use which may be made of them to govern. Structure, as has been observed, is what we are especially to look to and while the function to which a particular part is devoted is not to be altogether lost sight of, where the form is practically the same as in the case before us, the possible rather than the accidental use must decide.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

"As the result of the views so expressed the bill must be sustained as to the third and fourth claims of the first Greer and the third, fourth, fifth and eighth claims of the second."

Granting that the learned judge was mistaken, when discussing the structure of the Knox and Osborn patents, in saying that it was "conceded" that "it does not anticipate the particular claims under discussion, which require the combustion and the stack chamber to be of equal height with the ore chamber," it is clear to us, that though not conceded by the appellant, the learned judge was right in his opinion, that claims 3 and 8 of the second Greer patent, require all the chambers to be substantially coextensive. They expressly require that the ore chamber shall communicate "on one side at different points in its height with said stack, and on its opposite side at different points in its height with the combustion chamber." Substantial similarity between the extent of communication on the one side and on the other, is essential to this requirement. The drawings of the patents show the three chambers to be coextensive, and the expert testimony draws the inference of coextensiveness from the claims and specifications, the claims 3 and 8 closing with the words, "substantially as set forth," and "substantially as described," respectively. This language brings into the claim the par-

ticular description of the structure contained in the specifications, and the drawings to which they refer, and that description, as we read it, is of a structure containing a combustion chamber and an ore chamber of equal height, and a stack or draught producing chamber, coextensive therewith.

The decree of the court below is affirmed.